IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PUERTO RICAN AMERICAN INSURANCE, *et al.*

Plaintiffs,

v.                                                    CIVIL NO. 01-1186(SEC)

CARLOS H.  BURGOS DIAZ, et al.,

Defendants.

## REPORT AND RECOMMENDATION

## INTRODUCTION

This litigation involves allegations under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and a conspiracy to defraud in which plaintiffs allege defendants defrauded them by means of an insurance scam involving previously wrecked vehicles.

On May 10, 2001, the Court entered an Opinion and Order in the present case ordering the attachment of certain property belonging to the original defendants in order to secure the effectiveness of the judgment that may, in the future, be entered in favor of plaintiffs and against said defendants.  Accordingly, plaintiffs posted a $1,000,000.00 bond which was approved by the Court.  (Docket No. 61).

On May 20, 2003, co-defendants Rafael Rivera Vázquez, Isabel C. Hurtado and the Conjugal Partnership between them ("the Riveras"), Elmer León Cabello, Michelle Tirado

Serrano and the Conjugal Partnership between them ("the Leóns"), and Rafael E. Rivera-Sánchez ("Rivera-Sánchez") were added as defendants to this case.  (Docket No. 443).

On April 12, 2004, plaintiffs filed a "Motion to Seal" and a "Motion Requesting Ex Parte Order for Attachment and Prohibition to Alienate Real and Personal Property to Secure the Effectiveness of Judgment pursuant to Rule 64 F.R.C.P."    Plaintiffs asserted the new defendants, having been served with the summons and complaint, were most probably going to attempt to divest themselves of all of their assets in order to avoid the impact of any adverse judgment.  (Docket No. 613 and 614).

On April 22, 2004, the Court granted plaintiffs' ex-parte request and issued an ex-parte order of attachment extending the previous ex-parte order issued on May 10, 2001 (Docket No. 61) against all parties who were added as defendants to this case after May 10, 2001, including the above mentioned co-defendants.  (Docket No. 615).

On May 10, 2004, the Riveras filed an "Urgent Request to Set Aside Attachment and to Request Return of all Personal Property Seized by plaintiffs" (Docket No. 629) on the following grounds: 1) the Court lacks subject matter jurisdiction over plaintiffs' claims against the Riveras[1]; 2) plaintiffs do not meet the requirements established in Rivera Rodríquez Co. v. Stowell, 133

---

[1] The allegation of lack of jurisdiction was included and incorporated by reference as discussed in the Riveras' Motion to Dismiss (Docket No. 516) which was denied by the Court (Docket No. 727).  Thus, we need not address the allegation of lack of jurisdiction.

D.P.R. 881 (1993) to obtain an ex-parte attachment order, thus violating the Riveras' rights to due process of law; and 3) personal property which was not detailed in the 2001 Order and a savings account which does not belong to the Riveras were improperly seized (Docket No. 629).

On May 28, 2004, plaintiffs filed their Opposition to the Riveras' "Urgent Request to Set Aside Attachment and to Request Return of all Personal Property Seized by plaintiffs." In sum, plaintiffs argue the April 22, 2004 ex-parte order analyzed the standard for obtaining an ex-parte prejudgment attachment order. Plaintiffs claim the Court properly found this case presented extraordinary circumstances warranting an ex-parte order for prejudgment attachment of defendants' assets. Plaintiffs contend this case involves allegations of racketeering and a conspiracy to defraud over an extended period of time and plaintiffs' descriptions of the false claims included in the complaint and supporting documentation indicated they were likely to succeed on the merits. Plaintiffs allege the ex-parte order was necessary to avoid defendants, including the Riveras, from committing further illegal acts with the purpose of concealing real properties in order to make their scheme successful and achieve its ultimate purpose. (Docket No. 640).

On June 3, 2004, the Leóns and Rivera-Sánchez filed separate "Urgent Request[s] to Set aside Ex-Parte Attachment Order" claiming the April 22, 2004 ex-parte order is null

Puerto Rican American Insurance, et al  v. Carlos H.  Burgos Diaz, et al
Civil No. 01-1186(SEC)
Report and Recommendation
Page 4

because: 1) the Court lacks subject matter jurisdiction over plaintiffs' claims against these defendants[2]; and 2) it violates their constitutional right to a due process of law.  No properties have been seized from the Leóns nor from Rivera-Sánchez.  (Docket No. 649 and 650).

On June 3, 2004, the Riveras, the Leóns and Rivera-Sánchez filed an "Urgent Motion Requesting Evidentiary Hearing" to discuss the urgent motions which had been previously filed to set aside the ex-parte attachment.  (Docket No. 651).

On June 14, 2004, plaintiffs filed separate Oppositions to Rivera-Sánchez' and the Leóns' "Urgent Request to Set Aside Ex-parte Attachment Order" under the same grounds included in the Opposition to the Riveras' "Urgent Motion." (Docket No., 640, 655 and 656).

On August 6, 2004, a "Second Motion for Hearing regarding the Court's Ex-parte Order of Attachment" was filed by the Riveras, the Leóns and Sánchez-Rivera.  (Docket No. 716).

On January 4, 2005, the above motions were referred to this Magistrate Judge for report and recommendation.  (Docket No. 753).

On February 17, 2005, the case was called for a hearing before this Magistrate Judge. (Docket No. 781).  Present at the hearing were attorneys James W. McCartney, Rafael Barreto and Fernando Fornaris for plaintiffs and attorney María I. Santos on behalf of co-defendants the Riveras, the Leóns and Rivera-Sánchez.[3]   Attorney Santos addressed the Court in support

---

[2] The allegation of lack of jurisdiction was included and incorporated by reference as discussed in the the Leóns' Motion to Dismiss (Docket No. 503) and Rivera-Sánchez' Motion to Dismiss (Docket No. 514) which were denied by the Court (Docket No. 727).  Thus, we need not address the allegations of lack of jurisdiction.

[3] Attorneys John O'Connor, Hazel Justison, Julio Morales-Sánchez, Carlos Colón-Marchand and Jorge A. Cartaya were also present on behalf of other co-defendants unrelated to the request to lift the order of

Puerto Rican American Insurance, et al  v. Carlos H.  Burgos Diaz, et al
Civil No. 01-1186(SEC)
Report and Recommendation
Page 5

of her clients' motions to set aside the ex-parte order of attachment.  During oral argument, it came to the Court's attention Attorney Santos had never received, nor been able to retrieve, copy of plaintiffs' sealed motion for order of attachment.  (Docket No. 613 and 614).  Copy of said motion was handed to Attorney Santos at that time.

Attorney McCartney argued plaintiffs' position the order of attachment issued by the Court is proper and offered evidence and witnesses in support of plaintiffs' contention.  In turn, Attorney Santos objected to the offering of evidence by plaintiffs and argued co-defendants' position as to the ex-parte order of attachment being in violation of her clients' due process rights.

The undersigned heard these arguments and took a short break to confer with the presiding District Court Judge, Hon. Judge Salvador Casellas, because plaintiffs wanted to present new evidence which was not available to the Court when issuing the April 24, 2004 ex-parte order.  Hon. Judge Casellas allowed the new evidence and the undersigned met with the attorneys in chambers to coordinate the holding of an evidentiary hearing.  The evidentiary hearing was set for March 29 and 30, 2005 at 9:30 am.   Due to Attorney Santos' health reasons, the hearing was re-scheduled for May 24, 2005.  (Docket No. 811 and 815).  On May 23, 2005, the hearing was re-scheduled *sua sponte* by the Court for June 7, 2005.  (Docket No. 836).

---

attachment.  Accordingly, these attorneys did not actively participate during the hearing.

Puerto Rican American Insurance, et al  v. Carlos H.  Burgos Diaz, et al
Civil No. 01-1186(SEC)
Report and Recommendation
Page 6

On June 7, 2005, the evidentiary hearing was held.    Present at the hearing were attorneys James W. McCartney and Rafael Barreto for plaintiffs and attorney María I. Santos on behalf of co-defendants the Riveras, the Leóns and Rivera-Sánchez.  Plaintiffs called as their witness Santos Martínez-Maysonet, representative of PRAICO, and co-defendant Rivera-Vázquez.  Defendants called as their witnesses Juan A. Torres-Figueroa, representative of Banco Popular of Puerto Rico ("BPPR"), and Rafael Rivera-Bermúdez.[4]  Oral arguments in favor of each party's position were heard, in addition to evidence and testimony presented.  (Docket No. 883).

We are now in a position to recommend to the Court on this matter.

## STANDARD FOR OBTAINING AN EX-PARTE PREJUDGMENT ATTACHMENT ORDER

This District Court had the opportunity of summarizing the standard for obtaining an ex-parte prejudgment attachment order in Nationwide Mut. Ins. Co. v. Pérez, 1997 WL 557630 (D.P.R. 1997, unpublished).  Thus, we make direct reference to the same.

Federal Rule of Civil Procedure 64 provides the prejudgment remedy of attachment for the purpose of securing satisfaction of a judgment ultimately to be entered is available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought. Fed.R.Civ.P. 64. In the case at bar, the applicable law is Puerto Rico Rule of Civil Procedure 56. Rule 56 provides, in relevant part:

---

[4] Rivera-Bernúdez is the father of co-defendant Rivera-Vázquez and he is not a party to this action.

## RULE 56. PROVISIONAL REMEDIES

### 56.1. General principles

In every action, before or after entering judgment, and on motion of claimant, the court may issue any provisional order it may deem necessary to secure satisfaction of the judgment. The court may order the attachment, garnishment, the prohibition to alienate, claim and delivery of personal property, receivership, an order to do or to desist from doing any specific act, or it may order any other measure it deems necessary, according to the circumstances of the case. In every case in which a provisional remedy is sought, the court shall consider the interests of all the parties and shall adjudicate as substantial justice may require.

### 56.2. Notice

No provisional remedy shall be granted, modified, set aside, nor shall any action be taken thereon without notice upon the adverse party and a hearing, except as provided in Rules 56.4 and 56.5.

### 56.3. Bond

A provisional remedy may be granted without the filing of a bond in any of the following cases:

(1) If it appears from public or private documents, as defined by law, signed before a person authorized to administer oaths, that the obligation may be legally enforced; or  (2) If party is indigent and expressly exempted by law from the payment of filing fees, and in the court's opinion the complaint adduces facts sufficient to establish a cause of action which may evidently succeed, and there are reasonable grounds to believe, after a hearing to that effect, that if such provisional remedy is not granted the resulting judgment would be academic since there would be no property over which to execute it; or (3) If a remedy is sought after judgment is entered.

Whenever the court grants the provisional remedy without the filing of a bond in accordance with the provisions of this rule, it may exclude certain property from its order.

In all other cases, the court shall require the filing of a bond sufficient to secure all the damages arising from the remedy. However, a defendant or respondent may retain the possession of the personal property attached by plaintiff or claimant by filing a bond for the amount the court deems sufficient to secure the value of said property. If the defendant furnishes a bond for the amount attached, the attachment will be left without effect.

56.4. Attachment or prohibition to alienate

If the requirements of Rule 56.3 have been met, the court shall issue, on motion ex parte of a claimant, an order of attachment or of prohibition to alienate. The attachment and prohibition to alienate real property shall be effected by recording them with the Registry of Property and notifying the defendant. In case of personal property, the order shall be carried out by depositing the personal property in question in court or with the person designated by it under the claimant's responsibility. On petition of any of the parties the court may order the auction and sale of fungible goods whose attachment or prohibition to alienate has been issued and the proceeds thereof shall be deposited in the manner provided by the court.

The party requesting the designation of a depository of the property to be attached shall furnish his address and telephone number, if any, of his residence or of his place of employment or business. The designated depository shall immediately notify the court, under the title of the case, any change of address or telephone number, or of place or conditions of the property attached.

The Supreme Court of Puerto Rico examined Rule 56 in light of the U.S. Supreme Court's decision in Connecticut v. Doehr, 501 U.S. 1, 111 S.Ct. 2105 (1991), and found it unconstitutional as written. See Rivera Rodríguez Co. v. Stowell Taylor, 133 D.P.R. 881 (1993).

In Doehr, 501 U.S. at 11, the United States Supreme Court held a Connecticut statute which permitted prejudgment attachment of real estate without prior notice or hearing, without a showing of extraordinary circumstances, and without a requirement that the person seeking the attachment post a bond, violated the Fourteenth Amendment of the U.S. Constitution. The

Supreme Court held that, in determining what process is due with respect to prejudgment attachment statutes, the relevant inquiry requires: 1) consideration of the private interest affected by the prejudgment measure; 2) examination of the risk of erroneous deprivation by the procedures used and the probable value of additional safeguards; and 3) the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burdens of providing greater protections. Id. at 11.

Applying this inquiry, the Supreme Court of Puerto Rico held in Rivera Rodríguez Co., 133 D.P.R. at 881, the mere posting of a bond without any additional guarantees could not prevent the damage that could be caused by the failure to hold a hearing. Accordingly, the Supreme Court of Puerto Rico held that Rule 56.4 is unconstitutional to the degree it allows a party to obtain an ex-parte attachment order without alleging or demonstrating the party has a prior property interest in the thing attached; without alleging or demonstrating the existence of exceptional circumstances; or without alleging or demonstrating the probability of prevailing by production of authentic documentary evidence showing that the debt is liquid, due and owing. Id.

## ANALYSIS

### I. Ex-Parte Order of Attachment of April 22, 2004.

Appearing co-defendants argue plaintiffs' Motion Requesting Ex Parte Order for Attachment and Prohibition to Alienate Real and Personal Property to Secure the Effectiveness

of Judgment pursuant to Rule 64 F.R.C.P." (Docket No. 613 and 614)  lacks any evidence to support the request to extend the 2001 attachment order to the new defendants and the Court failed to mention what analysis it followed to grant plaintiffs' request.  In turn, plaintiffs allege the nature of the acts set forth in the complaint and the illegal conduct of defendants comes within the purview of "extraordinary circumstances" established in Rivera Rodriguez Co., 133 JTS at 881.  Thus, they are likely to succeed on the merits and the ex-parte order of attachment was proper.

The original order of attachment issued in this case took into consideration evidence and documents presented by plaintiffs in their original motion for ex-parte attachment, including several sworn statements.  (Docket No. 61).  Contrary to the original motion for ex-parte attachment, plaintiffs' request to extend the ex-parte attachment order filed in 2004 did not include any sworn statements or other documents in support thereof.  Nonetheless, plaintiffs' request to extend the ex-parte attachment contains adequate detailed allegations which coupled with other documents and evidence on the record, available to the Court at the time of the issuance of the extension of the ex-parte order of attachment, warrant the same.

We now examine the evidence available to the Court when it extended the original ex-parte attachment order against the appearing co-defendants on April 22, 2004.

The Court considered the allegations of the Second Amended Complaint in which plaintiffs allege the Riveras, the Leóns and Rivera-Sánchez engaged in a complex scheme to defraud through a pattern of racketeering which extended over a period of years and caused

plaintiffs to pay out over one million dollars for false claims, as summarized herein below.

(Docket No. 443).

As stated by Hon. Judge García-Gregory in the original order of attachment and equally applicable to the new defendants under the Second Amended Complaint:

> Plaintiffs' allegations, if true, demonstrate an *animus furandi* that makes it likely that defendants will attempt to conceal the fruit of their endeavor since discovery of proceeds would facilitate a criminal conviction. A fraud of the nature alleged in the complaint has two objectives: the immediate objective is to steal the money; this immediate objective is carried through to the ultimate objective of enjoying the stolen money by hiding or spending it.  Examination of defendants' assets may lead to the conclusion that they were living far beyond their means, leading to the inference that they obtained additional income through wrongdoing.  A real danger exists that defendants will conceal any assets acquired with the proceeds of the alleged scheme before a judgment can be rendered.  Prompt action is therefore necessary.

(Docket No. 61).

In addition to the allegations of the Second Amended Complaint, a review of the record shows there was other evidence on the record which properly lead the Court to conclude plaintiffs had a reasonable likelihood of success on the merits, thus, warranting the extension of the original ex-parte attachment order against the appearing co-defendants.  (Docket No. 615).

Following is a summary of the pleadings and documents on the record available and considered by the Court before extending the ex-parte order of attachment.[5]

---

[5] The record of this case is voluminous.  This summary is not exhaustive inasmuch it only covers the most important pleadings related to this matter. There are other pleadings, which also support the Court's extension of the ex-parte order of attachment, which are not summarized herein.

**A.     The Riveras.**

1)      The **Second Amendment Complaint** includes specific facts and describes with particularity the fraudulent claims presented to plaintiffs by the Riveras. Plaintiffs specifically allege at the following paragraphs of the Second Amended Complaint the extent and involvement of the Riveras in the fraudulent scheme: 235-237, 262-264, 382-384, 409-411, 451-453, 460-462, 475-477, 508-510, 511-514, 520-522, 565-567, 652-654, 714-716, 789-791, 801-803, 806-807, 929-931, 959-961, 1055-1059, 1142-1144, 1181-1184, 1259-1261 and 1325-1327.   A simple reading of these allegations demonstrates plaintiffs have explicitly set forth allegations of fraud by detailing numerous instances in which the Riveras actively participated in the fraudulent scheme.   The allegations include specifics such as the named insured, the vehicle insured, the policy number, the claim number, the license plate number, the vehicle identification number (VIN), the numbers of the checks issued to settle the claim, and the addresses to which the checks were mailed.   Thus, plaintiffs' allegations specifically identified the names, dates and factual descriptions of each one of the predicate acts through which the Riveras defrauded plaintiffs.  (Docket No. 443).

2)      The **Second Amended RICO Statement** describes how Rivera-Vázquez actively and directly participated in at least twenty five (25) false claims acting as

a policyholder, a claimant or attorney.  In addition, Rivera-Vázquez actively procured the issuance of policies in order to eventually file the fraudulent claims and endorsed multiple checks.   Due to Rivera-Vázquez' participation, one hundred thirty nine (139)  checks were issued totaling $748,502.852.  (Docket No. 532, ¶ 157).

3)   **Plaintiff's Opposition to Motions to Dismiss** makes reference to the Second Amended Complaint and the Second Amended RICO Statement which describe with particularity the fraudulent claims presented to plaintiffs.  The Riveras attack in their Motion to Dismiss plaintiffs' allegations the scheme was well orchestrated.  Thus, plaintiffs attached to their Opposition an illustrative chart organized chronologically showing how the scheme worked.[6]  The chart details forty (40) alleged false claims filed by the participants as part of the scheme to defraud different insurance companies, including Rivera-Vázquez as claimant, policyholder or counsel, his friends and relatives including his wife co-defendant Isabel Hurtado and his son Rafael Rivera-Sánchez, his business partner Taynna Tosado, his employees Amable Guerrero and co-defendant Elmer León Cabello, his friends Zoraida Bernard, Antonio Feliberti and Ana Camacho and his tenants Luis Huertas and Ivan Cabrera Garay.  (Docket No. 550).

---

[6] This same chart was used by plaintiffs during the evidentiary hearing of June 7, 2005 for illustrative purposes as part of the testimony of Santos Martínez-Maysonet, representative of PRAICO.

### B.    The Leóns.

1)    The **Second Amendment Complaint** includes specific facts and describes with particularity the fraudulent claims presented to plaintiffs by the Leóns. Plaintiffs specifically allege  at paragraphs 1346 thru 1348 of the Second Amendment Complaint the extent and involvement of the Leóns in the fraudulent scheme.  (Docket No. 443).

2)    The **Second Amended RICO Statement** describes how attorneys and co-defendants Rivera-Vázquez, Rivera-Sánchez and Luis Huertas Soto recruited several defendants such as Elmer León-Cabello and his wife Michelle Tirado who actively and directly participated in the filing of several alleged false claims.  In addition, the statement describes the Leóns as participating in going to emergency rooms, pretending to have suffered injuries as a result of an automobile accident or fall, received treatment and gathered medical records which would later be used in the claim process.  Due to the Leóns' participation, one (1) check was issued for $3,650.00 and three (3) checks were issued by AIICO totaling $12,500.00.  (Docket No. 532, ¶ 160).

3)    **Plaintiff's Opposition to Motions to Dismiss** includes as exhibits excerpts from the depositions of Elmer León-Cabello  and Michelle Tirado taken as part of their claim against PRASA before the Court First Instance, Bayamón Part, Civil DKDP 02-0410 in which both are represented by their attorney co-defendant

Rivera-Vázquez in which they describe at least six (6) different claims filed by León-Cabello and Tirado for alleged accidents and falls.  (Docket No. 537).

4) **Illustrative Chart (Docket No. 50, Exhibit I)** details the alleged false claims filed by the Leóns as part of the scheme to defraud different insurance companies.

**C.    Rivera-Sánchez.**

1) The **Second Amendment Complaint** includes specific facts and describes with particularity the fraudulent claim presented to plaintiffs by Rivera-Sánchez. Plaintiffs specifically allege at paragraphs 653 and 654 of the Second Amended Complaint the extent and involvement of Rivera-Sánchez in the fraudulent scheme. The Second Amended Complaint describes the alleged fraudulent claim filed with the consent and participation of Rivera-Sánchez under his insurance policy culminating with the issuance of eleven (11) checks totaling $67,941.91. Out of the total amount, Rivera-Sánchez received two (2) checks one in the amount of $8,000.00 and the other in the amount of $3,596.00.    Rivera-Sánchez was represented in this claim by his father co-defendant Rivera-Vázquez. (Docket No. 443).

2) The **Second Amended RICO Statement** describes how attorneys and co-defendants Rivera-Vázquez, Rivera-Sánchez and Luis Huertas Soto recruited several defendants such as Rivera-Sánchez who was an employee of Rivera-

Vázquez' firm and actively participated in the filing of an alleged false claim.  In
addition, the statement describes Rivera-Sánchez as participating in going to
emergency rooms, pretending to have suffered injuries as a result of an
automobile accident or fall, received treatment and gathered medical records
which would later be used in the claim process.  (Docket No. 532, ¶ 143).

3)    **Plaintiff's Opposition to Motions to Dismiss** includes an allegation that
Rivera-Sánchez filed another claim against CAICO claiming damages allegedly
suffered as a result of an automobile accident.  It is asserted that CAICO, at the
time of the filing of the Opposition, was investigating this new claim because "it
has sufficient reason to doubt the likelihood of the claim."  (Docket No. 547).

4)    **Illustrative Chart (Docket No. 50, Exhibit I)** includes the alleged fraudulent
claim filed with the consent and participation of Rivera-Sánchez under his insurance
policy culminating with the issuance of eleven (11) checks totaling $67,941.91.

Based on the arguments included in plaintiffs' motion to extend the original ex-parte
attachment order and the evidence available to the Court at the time of the issuance of the
extension of the ex-parte order of attachment, the Court properly concluded plaintiffs are likely
to succeed on the merits of the case.  The Second Amended Complaint and the Second
Amended RICO Statement contain detailed allegations and descriptions of the numerous
insurance claims which were filed by the Riveras, the Leóns and Rivera-Sánchez.  It is apparent
plaintiffs have thoroughly investigated the alleged claims due to the details provided as

illustrated in the chart referenced above.  Thus, as concluded by the Court, "there is a possibility that certain co-defendants will most probably attempt to divest themselves of their personal and/or real property in order to avoid the impact of any adverse judgment." (Docket No. 615). Hence, the Court properly analyzed and determined under the applicable standard this case presents extraordinary circumstances under <u>Rivera Rodríguez</u> warranting the extension of the ex-parte order of attachment of the Riveras, the Leóns and Rivera-Sánchez' assets.  As concluded by the Court, the extension of the original ex-parte order was necessary to avoid defendants, including the new defendants, from committing further illegal acts with the purpose of concealing real properties in order to make their scheme successful and achieve its ultimate purpose.

In view of the fact that, before issuing the extension of the ex-parte order of April 22, 2004, the Court had sufficient evidence on the record to warrant same, the new evidence which was presented at the evidentiary hearing held on June  7, 2005 need not be considered in determining the validity of the extension of the ex-parte order of attachment.  For the sake of the argument, if the new evidence would be considered, including the testimony of  Santos Martínez-Maysonet, representative of PRAICO, related to details of the scheme as illustrated in the chart above mentioned, it would only strengthen our recommendation.

Accordingly, it is recommended the motions filed by the Riveras, the Leóns and Rivera-Sánchez requesting to set aside the attachment order of April 22, 2004 (Dockets No. 629, 649 and 650) be DENIED.

Puerto Rican American Insurance, et al  v. Carlos H.  Burgos Diaz, et al
Civil No. 01-1186(SEC)
Report and Recommendation
Page 18

## II.    Attached Property of the Riveras.[7]

### 1)    Household goods and children belongings.

The Riveras claim some personal property was attached, including household goods and children belongings, which were not authorized by the Court's ex-parte order.  (Docket No. 629).

A review of the attachment order shows the property described therein to be attached in favor of plaintiffs and against defendants includes "merchandise."   (Docket No. 61). "Merchandise" is defined as "a movable object involved in trade or traffic; that which is passed from hand to hand by purchase and sale."[8]  The challenged household goods and children belongings referred to in the Riveras' motion, which were improperly seized, are all goods bought and sold in business.   Thus, they fall under "merchandise" as described in the attachment order and were properly seized.

Accordingly, it is recommended the Riveras' request the personal property (household goods and children belongings) be returned be DENIED.

### 2)    Savings Account of Rivera-Bermúdez.

In addition, the Rivera's allege plaintiffs illegally seized the cash deposited in a savings account at the BPPR belonging to Rivera-Vázquez' father, Rafael Rivera-Bermúdez, which

---

[7] This matter is only discussed as to the Riveras because, to this date, no properties have been attached from the Leóns nor from Rivera-Sánchez.

[8] BLACK'S LAW DICTIONARY 1008 (8th ed. 2004).

contains his life-time savings.  It is alleged Rivera-Bermúdez is 81 years old, is partially blind and deaf and those savings are needed to take care of his daily and medical expenses (Docket No. 629).

The debtor and other depositors are in the best position to prove who owns the funds in a joint account, according to <u>Hayden v. Gardner</u>, 238 Ark. 351, 381 S.W.2d 752, 11 A.L.R.3d 1461 (1964), and therefore the judgement creditor should be given the benefit of a presumption that the debtor has equitable title to the entire account. The court quoted from Comments, 71 Harvard L. Rev. 557 (1958), describing the various types of jurisdictions in the field of joint bank account garnishment law. Public policy considerations were the deciding factor for the court in choosing to place the burden of proof on the account holders. The depositors have access to the pertinent facts, so they should be required to prove who owned the funds, and in what proportion. The court ruled that a judgment creditor may garnish the entire account, if necessary, to satisfy a judgment of one account holder, unless the parties to the account can show that some or all of the funds do not equitably belong to the debtor.  *See Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor* 86 ALR5th 527.

A creditor may garnish all of a debtor's joint account, since it presumably belongs entirely to the debtor, unless the evidence shows that the debtor did not own the funds, the court stated in <u>Baker v. Baker</u>, 1985 OK CIV APP 35, 710 P.2d 129 (Okla. Ct. App. Div. 2 1985). The issue is ownership, regardless whether the joint account holders are business associates, relatives, or

marital partners. In reaching a decision to apply a rebuttable presumption that a debtor owns the entire account, the court compared a bank account with an automobile as described in Gilles v. Norman Plumbing Supply Co. of Oklahoma City, Inc., 1975 OK CIV APP 62, 549 P.2d 1351 (Okla. Ct. App. Div. 2 1975).

A statute is unconstitutional for violating due process rights when it allows garnishment of a joint bank account without providing notice and an opportunity for a hearing, according to the court in General Motors Acceptance Corp. v. Deskins, 16 Ohio App. 3d 132, 474 N.E.2d 1207 (8th Dist. Cuyahoga County 1984). This depositor owned a joint bank account with her grandson. She did not actually know that the account had been garnished by her grandson's creditor until two months after the fact, partly because the court had her wrong address. When the trial court denied her request for a hearing, the depositor appealed. The matter was remanded for a hearing to determine how much of the account was exempt from garnishment and with instructions that the state's garnishment statute (Ohio Rev. Code Ann. §§ 2715.11 et seq.) was unconstitutional on its face to the extent that it denied this depositor her due process right to notice and a hearing.  See *Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor*.

The Supreme Court did have occasion to deal with a different form of property equally subject to divestiture at the control of a third party, namely, a taxpayer's interest in a joint bank account which gave either account holder the right to withdraw the proceeds. In a square holding, the Supreme Court said that this interest of the taxpayer in the bank account, although

it could be fully defeated by the other holder's withdrawal of the account proceeds, was (prior

to such a withdrawal) nonetheless "property" or "rights to property" of the taxpayer for federal

tax collection purposes. United States v. National Bank of Commerce, 472 U.S. 713, 724-26,

105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). U.S. v. Murray, 217 F.3d 59, 65 (1st Cir. 2000).[9]

Thus, turning to the instant case, it must be determined who owed the monies deposited

in the BPPR's savings account in issue.

During the June 7, 2005 evidentiary hearing, Rivera-Bermúdez testified he is 81 years

old  and is retired from the Army after 20 years of service.  Rivera-Bermúdez owns a small

grocery store at his house.  Rivera-Bermúdez indicated he has a savings account with BPPR

number 453-217037 in which $106.00 are deposited monthly by the Veterans Administration

(Exhibit E) and $751.20 are deposited monthly by DFAS Cleveland (Exhibit F).  Rivera-

Bermúdez opened the account in 1982 and he is the only one who deposits in said account and

withdraws from that account. The signature of his son co-defendant Rivera-Vázquez was added

to the account because Rivera-Bermúdez is old and sick and he wanted his son to have access

to his account to pay his bills in case anything happens to him.   All his life time savings are in

that account and he needs those savings to take care of his daily expenses and health

conditions.

---

[9] See Fragetti v. Fragetti, 262 A.D.2d 527, 527-28, 692 N.Y.S.2d 442, 443 (2d Dep't 1999) (holding
that joint bank account created presumption of joint ownership, which was rebutted by contrary evidence of
the parties' intentions and relative control over the funds); Vergari v. Kraisky, 120 A.D.2d 739, 740, 502
N.Y.S.2d 788, 789 (2d Dep't 1986) (holding that certificate of title constituted prima facie evidence of
ownership of a vehicle, which was rebutted by contrary evidence of the parties' relative dominion and control
over the vehicle).

In turn, Juan A. Torres Figueroa, representative of the BPPR, testified Rivera-Bermúdez opened the savings account in June 30, 1982 under his name only until October 21, 2002.  On October 22, 2002, Rivera-Vázquez was authorized to sign in the account and his signature was added.  (Exhibits A and B).   On cross-examination, Torres-Figueroa indicated that, after the signature of Rivera-Vázquez was added to the account, Rivera-Vázquez could withdraw all the money in the account without the signature of his father regardless of when the monies were deposited.   Both signatures are not required to withdraw money from the account.

After hearing the testimony of Rivera-Bermúdez and watching his demeanor on the witness stand, we find the same highly credible as to the fact the monies deposited in the subject account are his property.  In reaching this conclusion, we note plaintiffs have not introduced any evidence to rebut Rivera-Bermúdez' testimony the monies deposited in the joint account in question belong to him and not to his son Rivera-Vázquez.

In view of the jurisprudence above cited, the joint account in question could be garnished or attached in its entirety because the creditor (in this case plaintiffs) should be given the benefit of a presumption the debtor (in this case Rivera-Vázquez) has equitable title to the entire account.  Nonetheless, the attachment is valid unless the parties to the account can show that some or all of the funds do not equitably belong to the debtor.  The Riveras have so shown.

In this case, it is clear from the uncontested testimony of Rivera-Bermúdez all the monies deposited in the joint account belong to him and include his life time savings, retirement and pension.  No money has been deposited by his son co-defendant Rivera-Vázquez in said

Puerto Rican American Insurance, et al  v. Carlos H.  Burgos Diaz, et al
Civil No. 01-1186(SEC)
Report and Recommendation
Page 23

account.  Thus, the monies in the joint savings account do not belong to his son Rivera-Vázquez

who is the co-defendant in this case and to whom the ex-parte order of attachment applies.

Having the Riveras successfully proven all of the funds in the joint account do not equitably

belong to co-defendant Rivera-Vázquez but to his father Rivera-Bermúdez, who is not a party

to this action, the  attachment on the joint savings account should be lifted.

Accordingly, it is recommended the attachment of BPPR joint savings account number

453-217037 be LIFTED.


## CONCLUSION

In view of the foregoing, it is recommended the Riveras' "Urgent Request to Set Aside

Attachment and to Request Return of all Personal Property Seized by plaintiffs" (Docket No.

629) be GRANTED in part and DENIED in part.  Accordingly, the Riveras' request to set aside

the ex-parte attachment order of April 22, 2004 and to return the personal property seized by

plaintiffs is DENIED.  The Riveras' request to lift the attachment on BPPR joint savings account

number 453-217037 is GRANTED.

In addition, it is recommended the Leóns and Rivera-Sánchez separate "Urgent

Request[s] to Set aside Ex-Parte Attachment Order" (Docket Nos. 649 and 650) be DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation.

Failure to file same within the specified time waives the right to appeal this order.  Henley

Puerto Rican American Insurance, et al  v. Carlos H.  Burgos Diaz, et al
Civil No. 01-1186(SEC)
Report and Recommendation
Page 24

Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792

F.2d 4 (1st Cir. 1986).  *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d

985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role

reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial

hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th  of June of 2005.

s/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE