**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PUERTO RICAN AMERICAN INSURANCE CO., et al. | |
| Plaintiffs | |
| v. | **Civil No. 01-1186(SEC)** |
| CARLOS H. BURGOS DIAZ, et al. | |
| Defendants | |

**OPINION AND ORDER**

Before the Court are Co-defendants Rafael Rivera-Vázquez's, Isabel C. Hurtado's, the Rivera-Hurtado Conjugal Partnership's, Elmer León-Caballero's, Michelle Tirado-Serrano's, the León-Tirado Conjugal Partnership's and Rafael E. Rivera-Sánchez's (herein collectively called "Defendants") motions to set aside the Court's Attachment Order of April 22, 2004 (herein the "April Attachment Order")(Docket # 615) and for the return of all personal property seized by Plaintiffs (Dockets ## 629, 637, 649 & 650) and Plaintiffs' oppositions thereto (Dockets ## 640, 656 & 655). On January 4, 2005 the Court referred said motions to U.S. Magistrate Judge Camille Vélez-Rivé for an evidentiary hearing and a Report and Recommendation (Docket # 52). Magistrate Vélez-Rivé held an evidentiary hearing on February 17 and June 7, 2005 (Docket # 884). On June 30, 2005 Magistrate Vélez-Rivé issued her Report, recommending that Defendants' motions to set aside the Court's April Attachment Order be granted in part and denied in part (Docket # 904). Specifically, Magistrate Vélez-Rivé recommended that: (1) Co-defendants Rivera-Vázquez's, Hurtado's and the Rivera-Hurtado Conjugal Partnership's motion to set aside the Court's April Attachment Order and to return the personal property seized by Plaintiffs be denied, but that their request to lift the attachment on the Banco Popular de Puerto Rico Joint Savings Account # 453-217037 be granted; and (2) Co-defendants León-Caballero's, Tirado-Serrano's, the León-Tirado Conjugal Partnership's and Rivera-Sánchez's request to set aside the Court's April Attachment Order be denied in its entirety (Docket # 904).

**Civil No. 01-1186 (SEC)**                                                                                                  2
_____

      Only Defendants have filed a partial objection to the Magistrate's Report alleging that: (1) the documents used by the Court in issuing its April Attachment Order, to wit, the Second Amended Complaint (Docket # 443), the Second Amended RICO Statement (Docket # 532) and Plaintiffs' Oppositions to Defendants' Motion to Dismiss (Dockets ## 537, 547 & 550) are "one-sided, self-serving and conclusory pleadings and motions" (Docket # 905 at p. 5); (2) the Magistrate "chose to ignore" Defendants' previous filings and arguments presented at the evidentiary hearing (Docket # 905 at pp. 6-8); (3) the Magistrate erred in concluding that "children belongings and household furniture" constitute "merchandise" and as such, were rightfully seized by Plaintiffs (Docket # 905 at pp. 7-8); (4) the Magistrate failed to address Defendants' argument pertaining to the sufficiency of Plaintiffs' bond and whether the property attached exceeds the limit of $1,624,933.21 established by the Court in the Attachment Order of May 10, 2001 (herein "May Attachment Order") (Docket # 905 at p. 8). Notwithstanding said objections, the Court will **APPROVE and ADOPT** the Magistrate's Report and Recommendation in its entirety. Accordingly, the Court will **GRANT in part and DENY in part** Defendants' motions requesting that the Court's April Attachment Order be set aside and that Defendants' personal property seized by Plaintiffs be returned.

      **Standard of Review**

      Pursuant to 28 U.S.C. §§ 636(b)(1)(B), Fed. R. Civ. P. 72(b) and Local Rule 72(a) for the District of Puerto Rico, a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. See <u>Alamo Rodríguez v. Pfizer Pharm., Inc.</u>, 286 F. Supp. 2d 144, 146 (D.P.R. 2003). The adversely affected party can "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." <u>United States of America v. Mercado-Pagán</u>, 286 F. Supp. 2d 231, 233 (D.P.R. 2003) (<u>quoting</u> 28 U.S.C. § 636(b)(1)). Aside from being filed in a timely manner, objections "shall specifically identify the portions of the proposed findings,

recommendations or report to which objection is made and the legal basis for such objection." Local Rule 72(d).

The scope of review of a Magistrate's recommendation is set forth in 28 U.S.C. § 636(b)(1)(c). This section provides that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified findings or recommendations to which [an] objection is made." Id. The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," however, if the affected party fails to timely file objections,"'the district court can assume that they have agreed to the magistrate's recommendation.'" Alamo-Rodríguez, 286 F. Supp. 2d 144, 146 (D.P.R. 2003) (quoting Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985)). Thus, no review is required of those issues to which objections are not timely raised. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987). In fact, a party who fails to file any objections to the Magistrate Judge's Report and Recommendation within ten days of its filing waives his or her right to appeal from the district court's order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia-Copete, 792 F.2d 4, 5 (1st Cir. 1986); Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992) ("[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal").

**Applicable Law and Analysis**

**Procedural Background**

On February 14, 2001 Plaintiffs initiated the instant case by filing their first Complaint against many defendants (Docket # 1). This is a RICO action arising under Section 1962(c) and (d) of the RICO Act, 18 U.S.C. § 1962(c) and (d), and Plaintiffs, several insurance companies, seek recovery for damages inflicted by the defendants' continuous illegal and fraudulent actions. Plaintiffs have specifically alleged that the defendants participated in a

fraudulent scheme against them consisting of a series of carefully orchestrated and synchronized transactions – illegally representing false claims under automobile insurance policies issued by Plaintiffs for fictitious accidents involving bogus or non-existent damages to insured and to non-insured third party-automobiles.

Thereafter, Plaintiffs sought, and were granted, an ex parte pre-judgment attachment order on May 10, 2001 in which the Court stated that Plaintiffs could attach certain property, up to an amount of $1,624,933.21, to secure the effectiveness of a future judgment in their favor (Docket # 61). In support of their request for the May Attachment Order, Plaintiffs submitted nine (9) sworn statements made by investigators who detailed the specifics surrounding the fraudulent scheme carried out by the defendants. After considering said nine (9) affidavits and the allegations included in the Complaint, the Court concluded that Plaintiffs were likely to succeed on the merits and that the defendants would most likely attempt to conceal their endeavor by divesting their assets, thus, affecting Plaintiffs' ability to recover from a future favorable judgment. The Court also ordered Plaintiffs to post a $1,000,000 bond to cover any potential damages to the property seized (Docket # 61).

On May 6, 2002 Plaintiffs filed an Amended Complaint in the above-captioned case adding more defendants and describing in detail those new defendants' participation in the fraudulent automobile insurance scheme (Docket # 226). Then, after further investigation which revealed the expanding scope of the fraudulent scheme, on May 20, 2003, Plaintiffs filed a Second Amended Complaint (Docket # 443). In the Second Amended Complaint Plaintiffs alleged and specified Defendants' participation in the scheme. To this end, on April 13, 2004, Plaintiffs filed a motion requesting that the Court extend the May Attachment Order to the defendants included in the Second Amended Complaint, which naturally, included Defendants herein (Docket # 614). After considering the entire record and specifically the allegations included in the Second Amended Complaint, the Court reaffirmed its previous ruling that Plaintiffs' specific allegations were sufficient to meet the

**Civil No. 01-1186 (SEC)**                                                                                          5

"extraordinary circumstances" required under Rivera Rodríguez & Co. v. Stowell, 133 D.P.R. 881 (1993), which permits the issuance of an ex parte pre-judgment attachment order. As such, through the April Attachment Order, the Court extended the May Attachment Order to the property of the defendants included in the Second Amended Complaint (Docket # 615). There followed Defendants' motions to set aside the April Attachment Order and to return the seized personal property to Defendants. Having set the background, we proceed to discuss Defendants' objection.

      **1. Evidence used by the Court to issue the April Attachment Order**

Defendants argue that the evidence used by the Court to issue its April Attachment Order merely amounted to "one-sided, self-serving and conclusory pleadings and motions" (Docket # 905 at p. 5). This evidence, as the Magistrate correctly stated, included the allegations contained in the record at said time. Namely, the Second Amended Complaint, the Second Amended RICO Case Statement and Plaintiffs' Oppositions to Defendants' Motions to Dismiss.

We begin by noting that the April Attachment Order specifically stated that the Court considered, and agreed with, Plaintiffs' argument in that there was a real possibility that certain defendants would attempt to divest themselves of their property in order to avoid satisfying an adverse judgment (Docket # 615). The Court further noted that as such, it was merely **reaffirming or extending** its May Attachment Order which detailed the Court's reasoning behind its finding that, considering the nature of the case and allegations against defendants, there was: (1) supporting documentation indicating that Plaintiffs were likely to succeed on the merits (e.g. the above-referenced nine (9) affidavits), (2) a likelihood that defendants could attempt to conceal "the fruit of their endeavor," and (3) sufficient detailed allegations in Plaintiffs' complaint to reach both of the above-stated conclusions. See Dockets ## 61 & 615. Naturally, in issuing its April Attachment Order the Court not only considered Plaintiffs' motion requesting the extension, but also the evidence already

**Civil No. 01-1186 (SEC)**                                                                                           6

submitted by Plaintiffs in their initial request as well as the record as a whole. Notwithstanding, the Second Amended Complaint, as previously stated by the Court (and confirmed by the Magistrate's findings), is no different from the original Complaint. See Dockets ## 727 & 904.[1] That is, it provides a specific account of Defendants' alleged wrongdoings down to the name of the insured, vehicle insured, policy number, claim number, license plate number, vehicle identification number, numbers of the checks issued to settle the claims, amounts, etc., surrounding each and everyone of the allegations of fraud made against each of Defendants. Thus, we find that said Second Amended Compliant constitutes much more than "bald and conclusory allegations." For obvious reasons, the Second Amended Complaint is one-sided, but Defendants cannot seriously argue that the degree of specificity in which Plaintiffs' have pled the alleged fraudulent scheme does not justify a *prima facie* belief that Defendants could divest their assets in order to conceal their involvement in said scheme.[2] As such, the Second Amended Complaint and specific allegations included therein, standing alone, were sufficient for the Court to extend the May Attachment Order to Defendants' property since extraordinary circumstances had been alleged and the Court determined that these circumstances were in fact present.[3] Rivera-

---

[1] Defendants have filed a reconsideration of the Court's Opinion and Order of September 20, 2004 denying Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim (Docket # 730). Defendants have also filed a similar motion, titled Objection to Plaintiffs' Second Amended RICO Case Statement for failure to comply with the Court's Standing Order (Docket # 558). The Court will address both of these motions together in a separate order. However, given the specificity of Plaintiffs' allegations in the Second Amended Complaint and Plaintiffs' evident thorough investigative efforts, the Court does not foresee any changes on its ruling in this respect.

[2] A cursory review of Plaintiffs' Second Amended RICO Case Statement reveals the same amount of thoroughness and specificity in the description of each of Defendants' participation in the fraudulent scheme, which motivated the filing of the instant case (Docket # 532).

[3] "Extraordinary circumstances" have been defined as those circumstances in which it has been demonstrated that there is sufficient reason to believe that a defendant is taking steps to transfer, sell, or otherwise divest his/her assets in order to evade the payment of an adverse judgment. Rivera Rodríguez & Co. v. Stowell, 133 D.P.R. 881, 894 (1993) (our translation).

**Civil No. 01-1186 (SEC)**                                                                                                       7

Rodríguez & Co., 133 D.P.R. at 900; Feliciano-Figueroa v. Toste-Piñero, 134 D.P.R. 909, 916 (1993) (affirming that the Court may issue an ex parte attachment order when the existence of extraordinary circumstances has been **alleged or evidenced** by a party (emphasis added)); Ramos v. Colón-Figueroa, 2001 WL 242595 *7 (March 6, 2001) (suggesting that allegations which substantiate a *prima facie* belief that a defendant could divest its assets would be sufficient to meet the "extraordinary circumstances" standard set forth in Rivera-Rodríguez & Co).

**2. Magistrate Judge's Consideration of the Evidence**

In this respect, Defendants object to the Magistrate's alleged disregard of the testimony presented by Defendants in the evidentiary hearing and the arguments contained in Defendants' motions on the record (Docket # 905 at p. 7). However, Defendants have failed to explain why the Magistrate should have adopted their version of the facts and reject Plaintiffs' allegations as insufficient. Having held an evidentiary hearing on the matter, it was precisely the Magistrate's duty to make determinations of credibility, weigh the evidence, and adopt a version of the facts. Notwithstanding the foregoing, as specifically stated by the Magistrate in her Report, in reaching her conclusion she only considered whether the evidence before the Court prior to the issuance of the April Attachment Order was sufficient to warrant a finding of "extraordinary circumstances." As such, the Magistrate did not consider any of the evidence presented at the hearing because she expressly found that said evidence "need not be considered in determining the validity of the extension of the ex-parte order of attachment." (Docket # 904 at p. 17). Thus, based on the pleadings alone, the Magistrate concluded that the there were "extraordinary circumstances" warranting the issuance of the April Attachment Order.

**3. "Merchandise"**

In her Report, the Magistrate found that "household goods and children belongings" were included in the term "merchandise" and as such, were subject to the April Attachment

**Civil No. 01-1186 (SEC)**                                                                                      8

Order (Docket # 904 at p. 18). The May Attachment Order states that personal property includes:

> automobiles, trucks and other vehicles; personal safety boxes; cash; merchandise; deposits in banks and other financial institutions, in checking accounts, savings accounts, certificates of deposit, or in any other manner; securities and valuables in their possession or in any brokerage house or other financial institution; records and documents of accounts receivable; jewelry; office equipment such as furniture, computers, typewriters, desks, chairs, etc.; boats and other sea craft; including their engines motors, tackle, etc.; whether in possession of defendants or in the possession of or credits owed by third parties, that is not exempt from attachment under the laws of Puerto Rico

(Docket # 61 at p. 8). Defendants aver that household furniture and children belongings cannot be classified as "merchandise" since these items were not involved in trade or traffic and were not for sale (Docket # 905 at p. 8). After examining the definition used by the Magistrate to determine what constitutes "merchandise," to wit, "a movable object involved in trade or traffic; that which is passed from hand to hand by purchase and sale,"[4] we find that said definition in no way limits the term "merchandise" to those things which are for sale. Instead, the definition includes **any** movable object which **is bought from a merchant**. Thus, we agree with the Magistrate that the term "merchandise" clearly includes household furniture. We will, however, give Defendants an opportunity to brief the Court as to which "children belongings" they contend were improperly seized by Plaintiffs and why these should have been excluded from the April Attachment Order. Defendants are instructed to file said brief by **August 26, 2005**.

    **4. Sufficiency of Plaintiffs' Bond & Monetary Limit in the May Attachment Order**

In the May Attachment Order the Court imposed on Plaintiffs a $1,000,000 bond to cover any damages to the property seized. In the April Attachment Order the Court decided that the previously posted bond was sufficient to cover any possible damages to the property

---

[4] BLACK'S LAW DICTIONARY 1008 (8th ed. 2004).

**Civil No. 01-1186(SEC)**                                                                                              9
_____

seized pursuant to said order from the new defendants. Plaintiffs have posted said bond and, to date, it remains valid and in effect. Considering that the personal property seized is under the custody of a previously designated judicial depositary, we have no reason to believe that it will suffer any damages or that any potential damages would exceed $1,000,000. The Court is of the impression that a $1,000,000 bond is more than sufficient to cover any loss.

Finally, as to Defendants' argument that the seized property exceeds the amount allowed in the May Attachment Order, $1,624,933.21, the Court is not aware of any evidence in the record substantiating said averment. Absent any evidence that the seized property exceeds the amount set in the May Attachment Order, we will not speculate and alter the *status quo*.

**Conclusion**

Co-defendants Rivera-Vázquez's, Hurtado's and the Rivera-Hurtado Conjugal Partnership's motion is **GRANTED in part and DENIED in part**. Co-defendants León-Caballero's, Tirado-Serrano's, the León-Tirado Conjugal Partnership's and Rivera-Sánchez's motion is **DENIED**. Accordingly, the attachment imposed on the Banco Popular de Puerto Rico Joint Savings Account # 453-217037 is **VACATED**.

**SO ORDERED.**
In San Juan, Puerto Rico, this 18th day of August, 2005.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge