**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

PUERTO RICO AMERICAN   *
INSURANCE COMPANY, et als.   *
                              *
Plaintiffs                    *
                              *
v.                            *     **Civil No. 01-1186(SEC)**
                              *
CARLOS H. BURGOS, et als.     *
                              *
Defendants                    *
**********************************

**OPINION AND ORDER**

This action arises under Sections 1962 (c) and (d) of the Racketeer Influenced and Corrupt Organizations Act (herein "RICO"), 18 U.S.C.A. § 1962 (c) & (d). Plaintiffs in this action (hereinafter the Insurance Companies) seeks recovery for the damages inflicted by Co-defendant Rafael Ocasio-Ramos'[1] allegedly continuous illegal and fraudulent actions. The Insurance Companies have specifically alleged that Co-defendant Rafael Ocasio-Ramos participated in a fraudulent scheme against them whereby, through a series of carefully orchestrated and synchronized transactions, he illegally presented false claims under automobile insurance policies issued by the Insurance Companies for fictitious accidents involving bogus or non-existent damages to insured and non-insured third-party automobiles.

Pending before the Court is the Insurance Companies' motion for summary judgment against Co-defendant Rafael Ocasio-Ramos (Docket # 996)(hereafter Ocasio-Ramos). Ocasio-Ramos opposed said motion (Docket # 1115). After reviewing the parties' filings, and the applicable law, the Insurance Companies' motion for summary judgment will be **GRANTED in part and DENIED in part**.

---

[1] This case was filed against hundreds of defendants. However, after the conclusion of discovery, pending for adjudication are the Insurance Companies' claims against only some of those defendants (approx. 20). The Insurance Companies have filed separate motions for summary judgment against those individual defendants. Likewise, we will issue an Opinion and Order separately for each of those individual defendants.

**Standard of Review**

FED. R. CIV. P. 56(a) provides that: "[a] party seeking to recover upon a claim... may, at any time, after the expiration of 20 days from the commencement of the action... move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); NASCO, Inc. v. Pub. Storage, Inc., 29 F.3d 28 (1st Cir. 1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2725, p.401.

Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing, Greensburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Casas Office Machines, Inc. V. Mita Copystar America, Inc., 42 F.3d 668, 684 (D. P. R. 1994)(hereinafter Copystar). Notwithstanding this general rule, in order to defeat summary judgement, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See, Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005)(citing, Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)(hereinafter Hadfield). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgement has established an absence of material facts in dispute, and that he or she is

**Civil No. 01-1186 (SEC)**                                                                                                           3
_____

entitled to judgement as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting, Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also, Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8, (quoting, Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact-finder must resolve.")

**Applicable Law and Analysis**

In support of their motion for summary judgment, and in accordance with Local Rule 56(b), the Insurance Companies filed a separate SUF (Docket # 997)(hereinafter SUF) which was properly supported by affidavits, as required by FED. R. CIV. P. 56(e). On the other hand, Ocasio-Ramos' opposing statement did not comply with Local Rule 56 (c), which provides that

> "[a] party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule."

Failure to comply with this rule results in the Court deeming admitted the movant's SUF insofar as the facts contained therein are properly supported by record citations. See, Local Rule 56(e). Ocasio-Ramos' opposing statement, four pages long, merely stated that "at this time of the proceeding, there are many genuine issues of material facts: (sic) that impede a summary judgment." Docket # 1115, p. 1. Ocasio-Ramos further argued that the Insurance

**Civil No. 01-1186 (SEC)**                                                                                                   4
_____

Companies' motion was based on mere assumptions not supported by the evidence. In no part of the opposing statement did Ocasio-Ramos admit, deny or qualify any of the facts established by the Insurance Companies in their motion for summary judgment.

Notwithstanding the clear mandate of Local Rule 56 that the opposing party must controvert the facts properly supported by the movant, or face the admission of said facts, Ocasio-Ramos' opposition merely argues that the Insurance Companies' motion should not be granted as a matter of law because it is not properly supported by the evidence. His main argument is that the affidavits included as support to the Insurance Companies' SUF are self-serving documents that are insufficient to warrant summary judgment.

Ocasio-Ramos' argument is without merit. FED.R.CIV.P. 56(e) only requires that "[s]upporting and opposing affidavits ... be made on personal knowledge, ... set forth such facts as would be admissible in evidence, and... show affirmatively that the affiant is competent to testify to the matters stated therein." Ocasio-Ramos' opposition does not put forth facts that would cast a shadow over the affiants' personal knowledge of the facts or competency to testify on trial, nor does Ocasio-Ramos claim that the statements made in the affidavits would be inadmissible at trial.

As stated above, "in order to defeat summary judgement, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation." Hadfield, 407 F.3d 11, 15. In light of the foregoing, because Ocasio-Ramos failed to controvert the facts stated in the Insurance Companies' SUF in accordance with the Local Rules, the facts included therein and which are properly supported by the record will be deemed admitted. After reviewing the Insurance Companies' SUF (Docket # 997) and its supporting affidavits, the Court deems admitted all the facts included therein.

### A. Liability under RICO

Under Section 1962© of the RICO Act, "[i]t shall be unlawful for any person

**Civil No. 01-1186 (SEC)**                                                                                          5
_____

employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." In order to impose liability under Section 1962(c) of the RICO Act, the Insurance Companies must prove that (1) they are enterprises affecting interstate or foreign commerce, (2) that Ocasio–Ramos is associated with the enterprise; (3) that he participated in the conduct of the enterprise's affairs; and (4) that his participation was through a pattern of racketeering activity. Aetna Casualty Surety Co. v. P & B Autobody, 43 F.3d 1546, 1558 (1st Cir. 1994) (citing 28 U.S.C. § 1962(c))(hereinafter Aetna).

*"Enterprise affecting interstate commerce" requirement*

In the instant case, it is uncontested that the Insurance Companies are all authorized to engage in the business of insurance pursuant to the applicable provisions of the Insurance Code of Puerto Rico and are engaged in the distribution or acquisition of goods or services in interstate commerce (Docket # 997 SUF Nos. 1 & 2). As such, the first element of proof is met. Id. at 1558 (finding that a legitimate business which is a major property and casualty insurer doing business in many states is an "enterprise" affecting interstate commerce under RICO).

*"Associated with the enterprise" requirement*

As to the second element of proof, it is uncontested that Co-defendant Ocasio-Ramos was either an insured (policy holder) or a claimant under some of the Insurance Companies' policies. See, Docket # 997, SUF ## 4, 7, 10, 16, 19, 22, 25, 28, 31, 37, 40, 43, 46, 49, 51, 54, 57 & 60. Accordingly, per the First Circuit's interpretation in Aetna Casualty, the second element is met in this case. Id. at 1559 (holding that since an insured, a claimant or a body shop operator are each in a contractual relationship with the insurance company to whom they presented a false claim, they are likewise "associated with" the enterprise).

**Civil No. 01-1186 (SEC)** 6
_____

*"Participated in the conduct of the enterprise" requirement*

The third line of inquiry is whether Co-defendant Ocasio-Ramos participated in the conduct of the enterprise's affairs. To this end, the First Circuit has held that since "[a]ppraising allegedly damaged vehicles and investigating, processing, and paying automobile insurance claims are vital parts of Aetna's business [, b]y acting with purpose to cause Aetna to make payments on false claims, [defendants] were participating in the 'operation' of Aetna." Id. The First Circuit concluded that the defendants' filing of false claims with Aetna met the third requirement because it "caused the Aetna's appraisers to approve false claims and conduct their appraisals in a manner contrary to Aetna's business practices and caused Aetna to pay out large sums of money on false claims."Id., at 1560. Like Aetna, a vital part of the Insurance Companies' business includes investigating, processing and paying automobile insurance claims. Furthermore, it is undisputed that Co-defendant Ocasio-Ramos' actions caused the Insurance Companies to make payments for twenty-two (22) false claims related to automobile insurance policies (Docket # 997 SUF Nos. 3, 6, 9, 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42, 45, 48, 50, 53, 56 & 59). As such, the third element is also met.

*"Pattern of racketeering" requirement*

Lastly, the fourth element requires that the Insurance Companies prove that Co-defendant Ocasio-Ramos' participation be through a pattern of racketeering activity. This element has two evidentiary requirements: (I) that at least two (2) acts of racketeering are committed within the span of ten (10) years (predicate acts include mail fraud, wire fraud, and bribery as well as aiding and abetting these offenses) and (ii) proof of "'continuity' sufficient to show that the predicate acts constitute a 'pattern' of racketeering activity." Id. at 1560-61 (citations omitted).

As to the predicate acts, it is uncontested that Co-defendant Ocasio-Ramos

participated in the filing of twenty-two (22) false claims, either directly or indirectly, with six (6) of the Insurance Companies over a period of three (3) years (Docket # 997 SUF Nos. 3, 6, 9, 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42, 45, 48, 50, 53, 56 & 59). Furthermore, it remains uncontested that the U.S. Postal Service was used to send and receive relevant documents during the adjusting and processing of the fraudulent claims filed by Ocasio-Ramos. See, Docket # 997 SUF No. 62. Ocasio-Ramos in his opposition tries to dispute this fact by arguing: (1) that the Insurance Companies did not submit any correspondence as evidence to support this fact and (2) that "[i]n the regular business transactions of the type of the Plaintiffs' business, claimant picked the check up, and conducted personally the claims." See, Docket # 1115, p. 2.

Contrary to Ocasio-Ramos' arguments, the Insurance Companies did not need to present direct evidence that they in fact used the mail in the processing of the fraudulent claims; the Insurance Companies' affidavits, filed under penalty of perjury, are sufficient to establish said fact. Moreover, the First Circuit has held that a plaintiff need not prove that the defendant personally used the mail but only that the defendant acted "with knowledge that the use of the mails will follow in the ordinary course of business, or [acted in circumstances] where such use can be reasonably foreseen." Aetna, 43 F.3d at 1560 (quoting, United States v. Maze, 414 U.S. 395, 399 (1974)). Therefore, not only did the Insurance Companies present evidence sufficient to support their contentions that the mail was used in the processing of the fraudulent claims filed by Ocasio-Ramos, but the use of mail by the Insurance Companies could be reasonably foreseen by him. Therefore, we find that the evidence presented by the Insurance Companies in support of their motion for summary judgment is sufficient to establish the element of racketeering by Co-defendant Ocasio-Ramos.

Finally, as to the requirement of continuity, it is uncontested that the false claims presented by Co-defendant Ocasio-Ramos were related, and were part of, the same pattern

of racketeering activity. Therefore, the fourth and final element for liability under Section 1962© of the RICO Act is satisfied.

We note however that the SUF filed by the Insurance Companies stated that a false claim (specifically claim number 19991169245) was presented to PRAICO on June 22, 1999, which caused PRAICO to issue checks for accidents that did not occur. See, Docket # 997 SUF ## 33-35. Although this fact is properly supported by an affidavit subscribed by Santos Martínez-Maysonet, PRAICO's Claim Manager, who, according to his affidavit, had personal knowledge regarding the fraudulent claims, the facts alleged do not present a sufficient link between the alleged false claim and Co-defendant Ocasio-Ramos. Mr. Martínez-Maysonet's only reference to Ocasio-Ramos, in relation to claim number 19991169245, was that he appeared as an endorsee in one of the checks issued by PRAICO as a result of the fraudulent claim. We believe this fact to be insufficient to link Ocasio-Ramos to the fraudulent claim and hold him responsible for the entire amount disbursed by PRAICO in relation to said claim, namely $25,750.

Since Ocasio-Ramos can only be linked to claim number 19991169245 through his endorsement of check # 143409, in the amount of $4,750, we will only grant summary judgment n relation to that claim, the amount of $4,750 (which will be trebled as provided by the RICO statute). Ocasio-Ramos' liability as to the remaining $21,000 paid by the Insurance Companies in relation to claim number 19991169245 thus remains unadjudicated.

Hence, for the above-stated reasons, the Insurance Companies' motion for summary judgment on their Section 1962(c) of the RICO Act claims against Co-defendant Ocasio-Ramos is hereby **GRANTED in part and DENIED in part**.

### B. Damages

Under Section 1964(c) of the RICO Act, an injured party in his business or property by violation of Section 1962 (c) may recover "threefold the damages he sustains and the costs

**Civil No. 01-1186 (SEC)**                                                                                          9
_____

of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). In this case, it is undisputed that the Insurance Companies sustained a loss of $258,142.15 due to the false claims in which Co-defendant Ocasio-Ramos participated. Therefore, the Court having found Co-defendant Ocasio-Ramos liable under Section 1962(c) of the RICO Act, the Insurance Companies are entitled to recover $774,426.45, which is three times the actual damages caused by Co-defendant Ocasio-Ramos. Partial Judgment will be entered in favor of the Insurance Companies and against Co-defendant Ocasio-Ramos for the amount of $774,426.45. Furthermore, at the conclusion of this litigation, the Insurance Companies will be allowed to submit a brief regarding attorney's fees and costs associated with the litigation of this case and, after review by the Court, the instant Partial Judgment may be amended to account for said fees and costs as the Court deems appropriate.

    **SO ORDERED.**

    In San Juan, Puerto Rico, this 29th day of January, 2007.

                                  S/ *Salvador E. Casellas*
                                  SALVADOR E. CASELLAS
                                  U.S. Senior District Judge