## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

PUERTO RICO AMERICAN
INSURANCE COMPANY, *et al.*

    Plaintiffs.

    v.

CARLOS H. BURGOS, *et al.*

    Defendants,

**Civil No. 01-1186 (SEC)**

## OPINION AND ORDER

Before the Court are plaintiffs Puerto Rican American Insurance Company ("PRAICO"), National Insurance Company ("National"), Integrand Assurance Company ("Integrand"), Cooperativa de Seguros Multiples de Puerto Rico ("Cooperativa"), Caribbean Alliance Insurance Company ("CAICO"), and Universal Insurance Company's ("Universal") (collectively "Plaintiffs" or the "Insurance Companies") motion for summary judgment against defendants Rafael Rivera-Vázquez ("Rivera"), Isabel C. Hurtado-Suarez ("Hurtado") and their conjugal partnership (Dockets ## 1242-1243), and defendants' oppositions thereto (Dockets ## 1262-1263). Defendants also moved for summary judgment (Dockets ## 1245-1248), and plaintiffs opposed (Docket # 1266).[1] After reviewing the parties' filings, and the applicable law, both motions are **GRANTED in part and DENIED in part**.

### Factual and Procedural Background

This protracted litigation dates back to 2001, when several insurance companies initiated a massive civil action against multiple defendants under the Racketeer Influenced and Corrupt

---

[1] Both parties filed replies and sur-replies to each other's motions for summary judgment. See Dockets ## 1276, 1280, 127 & 1273.

Organizations Act ("RICO"),18 U.S.C. §§ 1961-1969.  Since 2001, however, the number of defendants in this case has dwindled significantly.[2] In fact, Rivera and his wife, Hurtado, are the only remaining ones. The cross-summary judgment motions before this Court thus solely involve Rivera, Hurtado, and their conjugal partnership. According to Plaintiffs' amended complaint (the "Complaint"), Rivera—and to a lesser extent, Hurtado—engaged in a scheme to defraud them by submitting false automobile insurance claims in contravention of RICO. See Docket # 443 ¶¶ 202-206. Specifically, the Complaint alleged that Rivera participated in these fraudulent claims, both as an attorney representing claimants and as a claimant himself, and that Hurtado took part in the hoax as a claimant. Id.

Comprehensive discovery ensued, accompanied by an active motion practice. The procedural skirmishing finally came to an end in 2006 when Plaintiffs moved for summary judgment against Rivera and Hurtado. Dockets ## 966, 973-978. Subsequently, Rivera and Hurtado riposted with a summary judgment motion of their own. Dockets ## 1010-1011. On June 12, 2008, this Court granted Plaintiffs' motion for summary judgment and entered judgment against defendants. Dockets ## 1156 & 1157.

In the same time frame, the Court denied Rivera and Hurtado's cross-summary judgment motion. Docket # 1176. Dissatisfied, Rivera and Hurtado appealed. The Court of Appeals ruled that the district court "[h]eld opposing parties to materially different standards in the application and enforcement of a local rule . . . ." Puerto Rico American Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 133 (1st Cir.2010). And, noting that "[t]he parties b[ore] the lion's share of the

---

[2] Some of the defendants settled with Plaintiffs, e.g., Docket ## 221, 289 & 1036. Judgment by default was entered against others, e.g., Dockets ## 957,-959. Most importantly, this Court has summarily ruled against other defendants on grounds analogous to the claims present here. Dockets ## 1092-1094.

responsibility for the predicament in which [this] [C]ourt found itself [,]" id. at 132 n. 8, the First Circuit vacated the orders on the cross-motions for summary judgment and remanded to the district. Id. at 128. In line with the First Circuit's directive, the parties re-filed their motions for a second round of cross-motions for summary judgment.

In their second motion, Plaintiffs reallege that Rivera and Hurtado participated in a fraudulent scheme against them, whereby, through a series of carefully orchestrated and synchronized transactions, they submitted fraudulent claims for fictitious accidents involving bogus or non-existent damages. Plaintiffs predicate their claims upon §1962(c), a substantive RICO violation, and §1964(c), which provides for a private cause of action to recover damages.[3] As a result of this fraud, Plaintiffs posit that Rivera and Hurtado are liable to them in the amount of $2,375,850.50. Docket # 1242, p. 14.

In their cross-motion for summary judgment, Rivera and Hurtado essentially argue that they did not participate in the alleged swindle, and that the Insurance Companies lack sufficient evidence to succeed on a substantive RICO claim. They also contend that Plaintiffs' conspiracy claims fail as a matter of law. See Dockets ## 1245 &1263.

---

[3] Although Plaintiffs' motion for summary judgment also seeks relief under §1962(d) (conspiring in violation of § 1962(c)), they provide this Court with literally zero legal and factual support. In other words, Plaintiffs have wilfully neglected to prosecute this cause of action. Because the Insurance Companies have failed to "spell out [this] argument squarely and distinctly," Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir.1988), this Court will disregard Plaintiffs' §1962(d) claims. Similarly, Plaintiffs failed to comply with Local Rule 7(a), which requires a party to provide the Court with citations and supporting authorities. In light of this nonobservance, Plaintiffs' motion for summary judgment is **DENIED** on this front. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); see also Harriman v. Hancock County, 627 F.3d 22, 28 (1st Cir.2010). Instead, the Court the will focus on Plaintiffs' § 1962(c) claims.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir.2005).   In reaching such a determination, the Court may not weigh the evidence.  Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir.1994).  At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir.1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact at issue that is both genuine and material.  Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted).  "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir.2005) (quoting Garside, 895 F.2d at 48 (1st Cir.1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir.2008). "Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, '[e]vidence that is inadmissible at trial, such as, inadmissible hearsay, may not be considered on summary judgment.'" Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir.2005) (quoting Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998)).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir.2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir.1997).  Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir.2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir.1994)). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . .Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence"); Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve.").

Cross-motions for summary judgment do not upend the summary judgment standard; they "[s]imply 'require [courts] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.'" Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey Partnership, S.E. Adria Int'l Group, Inc., v. Ferré Development, Inc., 615 F.3d 45, 51 (1st Cir.2010) (quoting Adria Int'l Group, Inc., v. Ferré Development, Inc., 241 F.3d 103, 107 (1st Cir.2001)). Although it is well-settled law that each cross-motion for

summary judgment must be decided on its own merits, "[t]hat does not mean, however, that each motion must be considered in a vacuum. When . . . cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time." Puerto Rico American Ins., 603 F.3d at 133 (citing Blackie v. Maine, 75 F.3d 716, 721 (1st Cir.1996).

**Material, Uncontested Facts [4]**

As insurance companies authorized to operate pursuant to the Insurance Code of this jurisdiction, Plaintiffs' businesses consist in receiving and issuing checks for losses reported by claimants whose property they insure. Docket # 1243 ¶ 1-2. They also invest the premiums they collect in the greater United States insurance market, among other places. Id. Naturally, the insurance companies constantly issue claims and checks for losses within the United States, thereby distributing and acquiring goods or services in interstate commerce. Id. Needless to say, the use of the postal service is both inherent and necessary to the insurance business.

On February 21, 2006, the United States charged Rivera with violating 18 U.S.C. §§ 371 (conspiracy to defraud) and 1341 (frauds and swindles). See Criminal Case No. 06-60 (JAG), Docket # 1. On even date, Rivera pled guilty— and was subsequently convicted— to Count One, which stated as follows:[5]

---

[4] Under Local Rule 56(c), if a nonmoving party includes any additional facts when opposing a motion for summary judgment, such facts must be in a separate section, set forth in separate numbered paragraphs, and supported by a specific record citation. The First Circuit has repeatedly held that when the parties ignore the Local Rules, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28(1st Cir.2000). The Court has therefore disregarded all additional facts provided by the parties without supporting record citations. For expediency and clarity, however, the Court will refrain from pointing out most instances of noncompliance; what follows are the facts the parties properly supported.

[5] On May 26, 2009, as a result of his plea agreement, Rivera was sentenced to 12 months in federal prison. See Criminal Case No. 06-60 (JAG), Docket # 36. On June 16, 2006, the Puerto Rico Supreme Court disbarred Rivera from the legal profession as a result of his federal conviction. See In

> [Rivera] knowingly and willfully conspir[ed] . . . with others, to commit offenses against the United States . . . [by] knowingly devis[ing] a scheme and artifice to defraud and obtain money from insurance companies by means of false and fraudulent pretenses and representations . . . by intentionally submitting false and fraudulent claims for automobile insurance[,] which caused and resulted in the mailing through the United States Postal Service, among others . . . .[6]

Docket # 1243-13, Exh. XIII, p. 1.

As part of his plea agreement, Rivera adopted and agreed to the United States' Statement of Facts that "[h]ad the matter proceeded to trial, that the United States would have proven those facts beyond a reasonable doubt." Id. at 5. In pertinent part, the Statement of Facts asserted that Rivera participated in a scheme that consisted "[i]n obtaining automobile insurance policies with different insurance companies in Puerto Rico, or recruiting persons with automobile insurance policies and orchestrating an accident to claim and collect from the insurance agencies . . . ." Id. at 8. Rivera, acting as an attorney, provided legal representation to the alleged victims of bogus automobile accidents, "[f]iled a claim with the insurance company[,] . . . [and] submit[ted] documents with false information to the insurance company in order to sustain the claim." Id. Lastly, the plea agreement declared that Rivera was one of the "[o]rganizers and leaders of this conspiracy which involved the participation of five or more persons." Id. at 6.

---

re Rivera Vazquez, 168 P.R. Dec. 168, 172 (2006).

[6] Rivera's admissions only encompass two false claims filed with PRAICO and Integrand. According to Rivera's plea agreement, moreover, Rivera submitted a fraudulent automobile claim to Integrand by means of a August 1, 2001 letter. Case No. 06-60 (JAG), Docket # 3, p. 3. He also admitted filing false therapy records of one of the alleged victims to inflate the claim with Integrand. Id. Although the defendants have not raised the issue of the admissibility of Rivera's guilty plea, to be sure, the Court finds it nevertheless admissible as a statement against interest under Fed.R.Evid. 803 (22); see also Crane v. Dunn, 854 A.2d 1180, 1187–90 (Md.App.2004) (admitting guilty plea for traffic offense). Arguably, Rivera's guilty plea could also be admitted as an admission under Fed.R.Evid. 801(d)(2)(B). See generally Weinstein's Federal Evidence § 803.24 (2d ed. 2005) (arguing that guilty pleas by party should be admitted as admission).

In addition to the false claims contained in Rivera's guilty plea, Plaintiffs have presented enough evidence to prove that Rivera and Hurtado's swindle also included various other false claims. In fact, the record reflects that, between 1995 and 2001, Rivera either filed several false claims as a claimant or participated as an attorney, representing claimants—including his wife Hurtado—who, in turn, filed fraudulent claims with the following insurance companies:[7]

*National*

In 1995, Rivera and Hurtado submitted a false claim to National. In it, they both appeared as claimants in a bogus automobile insurance reclamation. This, in turn, caused National to issue two checks payable to the Rivera-Hurtado couple for a combined $69,900.00. Docket # 1243 ¶¶ 60-62. Notably, this is the first instance where Hurtado appears as a claimant.

*PRAICO*

As part of his plea agreement, Rivera admitted that, in 2000, he (1) mailed a letter, through the United States Postal Service, to PRAICO; (2) made a false claim; and (3) submitted false physical therapy documents in support of such claim. Criminal Case No. 06-60 (JAG), Docket # 3, p. 2.  As a result of this bogus claim, PRAICO issued a check for $10,000, which Rivera cashed. Id.; Docket # 1247 ¶¶ 130-1. In addition, the undisputed facts demonstrate that, in 1997, Rivera filed three other fraudulent claims with PRAICO. See Docket # 1243 ¶¶ 6-7, 12-13 & 15-16. Consequently, PRAICO issued several checks payable to Rivera, totaling $112,500. Id. ¶¶ 8, 14, 17. [8]

---

[7] In the interest of brevity, the Court will obviate these claims' reference numbers. Also, the Court will only factor in the checks made payable to Rivera and Hurtado.

[8] The defendants make a a series of perfunctory and boilerplate denials by arguing lack of knowledge and hearsay, e.g., Docket # 1262 ¶¶ 6-20, but fail to provide any citations whatsoever in their opposition. This omission runs afoul of Local Rule 56(c), which requires a party opposing a motion for summary judgment to support any denials, qualifications, or new assertions by particularized citations

*Universal*

On February 10, 1998, Rivera, in his capacity as a claimant's attorney, presented a false automobile accident claim to Universal.  Docket # 1243 ¶¶ 78-79. As a result of the filing of this fraudulent claim, Universal issued checks payable to Rivera for the cumulative amount of $33,000. Id. ¶ 80.

*Cooperativa*

The record also shows that in 1997 Rivera participated in the submission of four fraudulent claims as the claimant's attorney. Id. ¶¶ 27-36. From 1998 to 1999, moreover, Rivera filed five other false claims with Cooperativa. Id. ¶¶ 39-53. Finally, on March 14, 2000, Rivera filed a cooked-up reclamation with Cooperativa. Id. ¶¶ 54-55. According to this claim, Rivera appeared as policyholder and claimant.  Id. As a result of Rivera's involvement, Cooperativa issued several checks and suffered a total loss of $206,067.62 Id. ¶ 82.[9]

---

to the record. If the party opposing summary judgment fails to comply with Local Rule 56(c), "the rule permits the district court to treat the moving party's statement of facts as uncontested." Alsina–Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir.2005). Similarly, defendants fail to comply with Local Rule 7(a), which requires a party to provide the Court with citations and supporting authorities. The same applies to all of defendants' boilerplate denials based on hearsay and lack of knowledge.

[9]   Cooperativa backs up its contentions with depositions from several persons involved in defendants' swindle, as well as an affidavit by Hipolito Torres, a private investigator contracted by Cooperativa. See Docket # 1234-6, Exh. VI; Docket # 1234-8, Exh. VIII, pp 94 - 104. Defendants, however, try to create a genuine issue of material fact with respect to this matter. See Docket # 1247 ¶¶111-118. In support of their contentions, Rivera and Hurtado provide this Court with Cooperativa's 30(b)(6) deposition, which is limited to attacking the deponents' credibility. See Docket # 1247-14, Exh. 9.2. But defendants had to show specific facts to convince this Court that there is a genuine issue for trial. Indeed, it is insufficient to simply assail the credibility of CAICO without a supporting showing. See Bose Corp v. Consumers Union of U.S., 466 U.S. 485, 512 (1984). For example, defendants could have provided this Court with affidavits of their own contradicting Cooperativa's robust evidence. Of course, by doing so, Rivera may have exposed himself to perjury charges. Accordingly, the Court finds that Rivera and Hurtado have failed to establish a genuine issue of material fact in connection with Cooperativa's claims.

**Civil No. 10-1610 (SEC)**                                                                              **10**

*CAICO* (formerly known as Nationwide)

On November 5, 1998, a false automobile accident claim was presented to CAICO. According to the undisputed facts, Rivera participated in the submission of this claim as the claimant's attorney. Docket # 1243 ¶¶ 63-65.[10] As a consequence of Rivera's participation, Cooperativa issued several checks, suffering a total loss of $25,000. Id. ¶ 82. As a result of these fraudulent claims, the aforementioned companies issued several checks payable to Rivera– and at least a check payable to Hurtado–resulting in the following cumulative losses for these companies: Universal: $33,000;  PRAICO: $112,500; Cooperativa: $206,067.62; CAICO: $25,000 and National for  $69,900.

**Applicable Law and Analysis**

**I.  Remaining Parties**

As an initial matter, Rivera and Hurtado contend that, because Integrand failed to appeal this Court's August 8, 2008 judgment (Docket # 1185), dismissing with prejudice "any other pending claims," that judgment became final against Integrand. Docket # 1248, pp.1-2. In consequence, defendants reason, Integrand cannot coalesce with the rest of the insurance companies now, i.e., Integrand no longer remains a plaintiff to this action. Docket # 1263, pp.

---

[10] CAICO supports these allegations with a declaration under penalty of perjury by Jose Virella, CAICO's Special Investigator. See Docket # 1234-3, Exh. III. Defendants, however, try to create a genuine issue of material fact with respect to this matter. See  Docket # 1247 ¶ 37. In support of their contentions, Rivera and Hurtado provide this Court with CAICO's 30(b)(6) deposition, which is limited to assailing Jose Virella's credibility. See Docket # 1260-3, Exh. 3.2(b). But defendants had to come forward with specific facts showing that there is a genuine issue for trial. Simply attacking the credibility of CAICO's affiants without a supporting showing is insufficient. See Bose Corp, 466 U.S. at 512 (1984).

**Civil No. 10-1610 (SEC)**                                                                                     **11**

1-2. Conceding, Integrand attempts to justify its failure to appeal by arguing that because this Court denied its summary judgment motion on a technical basis (failure to attach an exhibit to the motion) and not on the merits, and because the summary judgment slate was wiped clean, this Court should allow it to present its motion for summary judgment at this time. Docket # 1271, p. 3. Both parties, however, have failed to provide this Court with any legal authority supporting their contentions.

In its opinion, the Court of Appeals ordered this Court to "revisit these matters anew," noting that it was unable to pinpoint Integrand's involvement in that appeal, leaving it to this Court, on remand, "[t]o resolve Integrand's status." Puerto Rico American Ins. Co., 603 F.3d at 128 n. 2. Upon consideration, the Court concurs with defendants that because Integrand failed to appeal the judgment entered in its detriment, it cannot avail itself of the First Circuit's remand. The Court of Appeals, moreover, only vacated the judgments against the defendants and in favor of the remaining insurance companies.  Indeed, the court's opinion was limited to the Riveras and everyone but Integrand. It follows that Integrand, who did not appeal, cannot now benefit from this procedural reversion. See Marin Piazza v. Aponte Roque, 909 F.2d 35, 39 (1st Cir.1990)  (ruling that "the inescapable consequence of fail[ing] to appeal a judgment within the time allowed is that the judgment becomes final.").

More important, Integrand's position stands in direct conflict with the First Circuit's rather restrictive line of binding precedent refusing to sanction court-created exceptions to the fatal consequences of failing to appeal an adverse judgment. See e.g., Marin Piazza, 909 F.2d at 39 (holding that non-appealing plaintiffs could not benefit from reversal of judgment against the plaintiffs who did appeal, even though error had been found in judgments against all parties); U.S. v. Lumbermens Mut. Cas. Co., Inc., 917 F.2d 654, 662 (1st Cir.1990)  (holding

**Civil No. 10-1610 (SEC)**                                                                        **12**

that a party's failure to appeal "[m]akes it inappropriate for [the Court of Appeals] to modify the judgment against it notwithstanding the fact that the judgment was based on a legal error."); see also Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 399 n. 4, 101 S.Ct. 2424, 2428 n. 4, 69 L.Ed.2d 103 (1980) (observing the "generally accepted rule in civil cases that where less than all of the several co-parties appeal from an adverse judgment, a reversal as to the parties appealing does not necessitate or justify a reversal as to the parties not appealing.") (citation and internal quotation marks omitted).

Considering that Integrand provided this court with no case law, and given the strength of the aforementioned precedent, Integrand's failure to perfect an appeal from the judgment means that this insurance company remains bound by it. And, as a result, Integrand is not a proper party to the First Circuit's remand; that is, Integrand no longer remains a party to the case at hand.

**II. Liability under RICO**

As previously noted, Plaintiffs' summary judgment motion hinges on a 18 U.S.C. § 1962 (c) substantive RICO claim, which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." To succeed, Plaintiffs must prove "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." International Floor Crafts, Inc. v. Dziemit, —— F.3d ——, 2011 WL 1519113 at *6 (1st Cir. April 21, 2011) (quoting Kenda Corp. v. Pot O' Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir.2003)) (quoting in turn Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

Against this backdrop, the First Circuit has observed that the "[m]ajor purpose of RICO is to protect legitimate businesses enterprises from infiltration by racketeers." Id. at 1558. In the same vein, the Supreme Court has pellucidly stated that courts should interpret RICO broadly. E.g., Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (stating that "RICO is to be read broadly"). In fact, "[t]he RICO statute provides that its terms are to be liberally construed to effectuate its remedial purposes." Boyle v. United States, —— U.S. ——, 129 S.Ct. 2243, 173 L.Ed.2d 1265 (2009) (internal quotation marks and citations omitted).[11]

In Aetna Casualty Surety Co. v. P & B Autobody, 43 F.3d 1546 (1st Cir.1994), a controlling RICO case involving an insurance fraud scheme similar to the one alleged here, the First Circuit applied the traditional RICO test to a swindle perpetrated against Aetna. Notably, however, whereas Aetna involved one insurance company, the instant case implicates five insurance companies as plaintiffs. Nevertheless, Aetna provides a paradigm for insurance-fraud litigation, such as the one presented here. In line with Aetna, Plaintiffs must prove the following elements by a preponderance of the evidence: (1) that they, as insurance companies, are enterprises; (2) that affect interstate or foreign commerce; (3) that Rivera and Hurtado associated with the enterprises; (4) that the defendants also participated in the conduct of the enterprises; and (5) that their participation was through a pattern of racketeering activity. Aetna, 43 F.3d at 1558; § 1962 (c).

---

[11] Although Boyle dealt with a criminal RICO claim, "[i]t is appropriate to rely on [criminal] RICO precedent when analyzing [civil] RICO liability. The standard is the same for both criminal and civil RICO violations . . . . The RICO Act differentiates between criminal and civil liability by providing for criminal penalties in 18 U.S.C. § 1963, and civil remedies in 18 U.S.C. § 1964." U.S. v. Shifman, 124 F.3d 31, 35 n. 1 (1st Cir.1997). The same holds true about the rest of the criminal RICO precedent cited in this opinion.

**Civil No. 10-1610 (SEC)**                                                                 **14**

With these legal precepts in mind, the Court turns to the facts of this case.

*"Enterprise affecting interstate commerce"*

Plaintiffs argue that Rivera and Hurtado comprise the enterprise because they formed an association-in-fact with the other defendants mentioned in the Complaint. Alternatively, they argue that each Plaintiff, as an insurance company targeted by defendants, is also "the enterprise" for purposes of RICO. Docket #1242, p. 4. At the outset, Rivera and Hurtado make much of the fact that, in the complaint, Plaintiffs argued that "every insurance company . . . were also the 'enterprise.'" Docket # 1263, p. 6-7 (quoting ¶ 1364 of the Complaint). Based on this, the defendants argue that Plaintiffs deliberately circumscribed the definition of "enterprise" to the conglomeration of all the insurance companies, as opposed to the scenario wherein each insurance company forms a single enterprise.[12] But this contention— that Plaintiffs never pled that each insurance company comprised an enterprise— is counterintuitive given Plaintiffs' single-minded reliance on Aetna, which specifically held that one individual insurance company comprised an enterprise. See Aetna, 43 F.3d at 1557. In any event, the defendants' restrictive interpretation of this term is unavailing in light of the U.S. Supreme Court's mandate to define the scope of the enterprise in broad terms. National Organization for Women, Inc. v. Scheidler,

---

[12] Rivera and Hurtado know that the only way the Insurance Companies can group together to form an enterprise is by conglomerating as an association-in-fact. But because Plaintiffs compete against each other, they cannot comply with this requirement. Plaintiffs, however, still could prove that Rivera and Hurtado formed an association-in-fact. Surprisingly, Plaintiffs fail to provide this Court with evidence pointing to the existence of any association-in-fact. The defendants, on the other hand, have succeeded in proving that they did not partake in the association-in-fact alluded to in the complaint. See Docket # 1246 ¶¶ 19-21 & Docket # 1266, p. 4-5. Accordingly, this Court will confine its attention to Plaintiffs' only plausible and properly supported theory, i.e., every plaintiff comprises a single enterprise.

**Civil No. 10-1610 (SEC)**                                                                    **15**

510 U.S. 249, 257, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("RICO broadly defines enterprise") (internal quotation marks omitted).

Moreover, the RICO statute, which is merely illustrative as opposed to exhaustive, declares that the term "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961(4); see also U.S. v. Cianci, 378 F.3d 71, (1st Cir. 2004) (holding that "enterprise" includes "(1) legal entities such as legitimate business partnerships and corporations, and (2) illegitimate associations-in-fact marked by an ongoing formal or informal organization of individual or legal-entity associates . . . who or which function as a continuing organized crime unit for a common purpose of engaging in a course of conduct.") (citation and internal quotation marks omitted). As a corollary to this definition, to meet the enterprise element, "[a] plaintiff may prove . . . the existence of a legal entity, such as a corporation . . . ."Aetna, 43 F.3d at 1557.

In the instant case, it is uncontested that Plaintiffs, as insurance companies, are corporations authorized to engage in the insurance business in this jurisdiction. As noted above, under § 1961, an enterprise may include a legitimate legal entity as a racketeering victim. U.S. v. Browne, 505 F.3d 1229, 1272-73 (11th Cir. 2007) (holding that an entity may be both a RICO enterprise as well as the victim of the predicate acts); Aetna, 43 F.3d at 1558 (holding that the term enterprise "[i]ncludes legitimate corporations," such as insurance companies) (citation and internal quotation marks omitted); cf. United States v Huber, 603 F2d 387, 394 (2d Cir.1979), cert den 445 US 927 (permitting the inclusion of a group of corporations as an enterprise even though a group of corporations is not a group of individuals associated-in-fact within the meaning of the definition of enterprise). In light of the foregoing, and considering

**Civil No. 10-1610 (SEC)**                                                                                 **16**

the broad reach of RICO's remedial mechanisms, the Court agrees with Plaintiffs that each insurance company composes an enterprise.

Furthermore, to the extent that Plaintiffs provide coverage for their policy holders outside of Puerto Rico, <u>e.g.</u>, in the continental United States, Plaintiffs engage in the distribution or acquisition of goods or services in interstate commerce. Accordingly, Plaintiffs comply with the first element of a substantive RICO claim. <u>See Aetna</u>, 43 F.3d at 1558 (finding that a legitimate business which is a major property and casualty insurer doing business in many states is an "enterprise" affecting interstate commerce under RICO); <u>United States v. Owens</u>, 167 F.3d 739, 755 (1st Cir. 1999) (holding that only a minimal effect on interstate commerce is necessary), <u>rev'd in part on other grounds</u>, 483 F.3d 48 (1st Cir. 2007); <u>United States v. Johnson</u>, 440 F.3d 832, 841 (6th Cir. 2006) (ruling that "[o]nly a minimal impact on interstate commerce is necessary to support a RICO conviction" and that "the interstate nature of the predicate acts themselves can establish the required connection between the enterprise and the interstate commerce."); <u>see cf.</u> <u>U.S. v. Morales-de Jesus</u>, 372 F.3d 6, 9 (1st Cir.2004) ("Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities.") (quoting <u>United States v. Lopez</u>, 514 U.S. 549, 558-59 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)).

*"Associated with the enterprise"*

Section 1962(c) states that the culpable person be "employed by or associated with" the enterprise whose affairs are conducted through a pattern of racketeering activity. The <u>Aetna</u> Court held that, as claimants, the defendants were associated with the enterprise of Aetna because "[i]n ordinary usage, one who, for example, buys an insurance policy from an enterprise

**Civil No. 10-1610 (SEC)**                                                                    **17**

and depends on the solidarity of that enterprise, for protection against defined risks, has an association with, and may be said to have 'associated with,' the enterprise." <u>Aetna</u>, 43 F.3d at 1559.

Albeit partially, the Insurance Companies readily meet this requisite. As policy holders or claimants under the insurance companies' policies, Rivera and Hurtado have associated with Plaintiffs. Such indirect contractual arrangement between them, without more, suffices. <u>See</u> <u>id.</u> (holding that insurance policy holders and claimants are "associated with the enterprise."); <u>United States v. Yonan</u>, 800 F.2d 164, 167  (7th Cir.1986), <u>cert. denied</u>, 479 U.S. 1055 (1986) (ruling that a defendant "[c]an associate with the enterprise by conducting business with it, even if in doing so the defendant is subverting the enterprise's goals."); <u>cf.</u> <u>U.S. v. Brandao</u>, 539 F.3d 44, 51 (1st Cir.2008) (stating that "[t]he RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise.") (internal quotation marks and citation omitted).

<u>Aetna</u> thus controls this instance not least because its facts clearly parallel the ones at issue today. Accordingly, Plaintiffs have proven that Rivera and Hurtado, as policy-holders or claimants, associated with the insurance companies. According to the irrefragable facts, however, Hurtado only associated with National. In other words, she neither filed claims nor had an insurance policy with four of the insurance companies, <u>i.e.</u>, CAICO, PRAICO, Universal, and Cooperativa. Rivera, on the other hand, associated with all of the insurance companies. Having failed to meet this prong in regard to Hurtado, it follows that CAICO, PRAICO, Universal, and Cooperativa's § 1962 (c) claims against Hurtado fail as a matter of law. The Court thus **GRANTS** defendants' motion for summary judgment on this front.

*"Participated in the conduct of the enterprise"*

The third line of inquiry questions whether Rivera and Hurtado participated in the conduct of the enterprises' affairs. The U.S. Supreme Court has interpreted "conduct or participate" to mean that the individual alleged to have violated the statute must have participated "in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Moreover, the Reves Court noted that "[t]he word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise . . . ." Id. at 179.

In conformity with Reves, the First Circuit in Aetna held that since "[a]ppraising allegedly damaged vehicles and investigating, processing, and paying automobile insurance claims are vital parts of Aetna's business, [b]y acting with purpose to cause Aetna to make payments on false claims, [defendants] were participating in the 'operation' of Aetna." Aetna, 43 F.3d at 1559. It reasoned, moreover, that the filing of false claims "[c]aused Aetna's appraisers to approve false claims and conduct their appraisals in a manner contrary to Aetna's business practices . . . ." Thus, noting that the Aetna defendants "[c]aused Aetna to pay out large sums of money on false claims[,]" the First Circuit concluded that the "participation" requirement was met. Id. at 1560.

Here, as in Aetna, a vital part of Plaintiffs' business includes investigating, processing, and paying automobile insurance claims. Furthermore, it is undisputed that Rivera and Hurtado filed several false claims with the Insurance Companies. This, in turn, led the Insurance Companies to make payments for at least eighteen false claims related to automobile insurance

policies. The foregoing evidence is thus sufficient to conclude that Rivera and Hurtado "exerted control over the enterprise." Aetna, 43 F.3d at 1560; Puerto Rico American Ins. Co. v. Burgos, 556 F.Supp.2d 86, 91 (D.P.R.2008) (holding that defendants' actions causing insurance companies to make payments for false claims related to automobile insurance policies satisfied the operation and management requirement). Accordingly, Plaintiffs meet the third element insofar as Rivera and Hurtado's actions satisfy the "operation or management" test. [13]

In an attempt to distinguish Aetna, Rivera and Hurtado contend that, since no employees of the Insurance Companies were involved in Rivera's swindle—whereas in Aetna two of the defendants were employed by the insurance company—the defendants could not have participated in the conduct of the insurance company enterprise. See Docket # 1263, p. 9. While defendants fail to cite any case law in support of this contention—a more restrictive approach to the operation and management requirement—this Court discovered that defendants' rigid view has been adopted by some courts in the Second Circuit, e.g., Allstate Ins. Co. v. Seigel, 312 F.Supp.2d 260 (D.Conn.2004); In re SmithKline Beecham Clinical Lab., Inc. Lab. Test Billing Practices Litig., 108 F.Supp.2d 84 (D.Conn.1999). Such divergence is unsurprising. Concurring, Justice Scalia once noted that some aspects of RICO "produce[] the wildest and most persistent Circuit split[s] on an issue of federal law in recent memory." Gregory P. Joseph, Civil RICO, at xiii (3d ed. 2010) (citation and internal quotation marks omitted). In failing to fully develop their argument, however, Rivera and Hurtado have fallen short of convincing this Court to deem Aetna inapplicable to the instant case. The mere fact that there were no "insiders" involved in the Rivera swindle is insufficient to distinguish this instance from Aetna. And given the liberality with which courts should construe RICO, and considering the equities involved

---

[13] Of course, as previously noted, Hurtado only participated in the "conduct" of National.

**Civil No. 10-1610 (SEC)**                                                                    **20**

here, this Court finds no reason to deviate from <u>Aetna</u>'s unambiguous holding. In view of the First Circuit's liberal application of the RICO Act, this Court finds defendants' argument unavailing as it stands in direct conflict with controlling case law.

   *"Pattern of racketeering" requirement*

   Lastly, a RICO offense requires two or more predicate acts of racketeering activity. 18 U.S.C. § 1962(a). Plaintiffs must prove that Rivera and Hurtado participated in the conduct of the enterprises' affairs through a pattern of racketeering activity.  A "pattern of racketeering activity" requires proof of at least two specified federal crimes, such as mail fraud, within the span of ten years. <u>U.S. v. DeCologero</u>, 364 F.3d 12, 16 (1st Cir.2004) (citing 18 U.S.C. §§ 1961(1), (5)). In jargon, "[t]he various acts of racketeering activity described in the statute are often referred to as 'predicate acts' [or 'racketeering acts'] because they form the basis for liability under RICO." <u>BancOklahoma Mortg. Corp. v. Capital Title Co.</u>, 194 F.3d 1089, 1102 (10th Cir.1999).

   "Mail fraud takes place '[w]henever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'" <u>Bridge v. Phoenix Bond & Indem. Co.</u>553 U.S. 639, 647 128 S.Ct. 2131, 2138 (2008) (quoting 18 U.S.C. § 1341). In <u>Bridge</u>, the U.S. Supreme Court noted that "[t]he gravamen [mail fraud] is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contain[s] no false information."(citation and internal quotation marks omitted; alterations in original).

   But merely proving the commission of two predicate acts is insufficient. Indeed, to establish a "pattern of racketeering acts," the Insurance Companies must also prove that the two

**Civil No. 10-1610 (SEC)**                                                                          **21**

predicate acts, pertinent to this case—several instances of mail fraud—"[a]re related*, and* amount to or pose a threat of continued criminal activity.'" Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 16 (1st Cir.2000) (emphasis added) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). Although the First Circuit has recognized that "[t]here is no precise formula to . . . determine whether [predicate acts] pose[] a continuing threat of criminal behavior . . . ." Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir.2003), "[t]he 'relatedness' prong [nevertheless] may be satisfied by proof that the predicate acts have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." U.S. v. Brandao, 539 F.3d at 55 (citations and internal quotation marks omitted). In sum, the "relatedness" element "[i]s intentionally flexible . . . ." Id. (quoting H.J. Inc., 492 U.S. at 238; Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44 (1st Cir.1991) (holding that "[t]he relatedness test is not a cumbersome one for a RICO plaintiff.")

Recapping, Plaintiffs must prove that Rivera and Hurtado (1) committed at least two acts of racketeering; (2) within the span of ten years; and (3) that such acts constitute "a pattern of racketeering activity," i.e., that they are sufficiently related and they amount to or pose a threat of continued criminal activity.

As a preliminary matter, Rivera and Hurtado contend that Plaintiffs must prove two or more predicate acts of racketeering activity in connection with *each* enterprise. See Docket # 1248, p. 9. But Plaintiffs fail to even try to rebut this important contention. And considering Plaintiffs' only viable legal strategy—that each plaintiff constitutes an enterprise—such omission is necessarily fatal to their case. Having found no case law in support of either side,

**Civil No. 10-1610 (SEC)**                                                                          **22**

the Court sees no reason to reject defendants' straightforward interpretation of this last requirement.

According to the uncontested facts, Rivera only presented one false claim with CAICO, Universal, and National. Specifically, the undisputed facts show that Rivera committed (1) one act of racketeering with respect to National; (2) one predicate offense against Universal; and (3) one racketeering act in connection with CAICO. But because each insurance company comprises a single enterprise, Plaintiffs had to prove that Rivera committed at least two predicate acts of racketeering activity in connection with each respective enterprise. CAICO, Universal, and National cannot conglomerate their claims to circumvent this requirement. Cf. United States v. Indelicato, 865 F.2d 1370, 1383 (2d Cir.1989) (en banc), cert. denied, 491 U.S. 907 (1989) ("[Disapproving] any attempt by . . . a plaintiff to go beyond Congress's intent and fragment an act . . . into multiple acts in order to invoke RICO, [and] conclud[ing] that where in fact there are a number of different acts, each should be separately counted.").

Because CAICO, Universal, and National have failed to meet this last prong, their claims against Rivera fail as a matter of law. Consequently, the Court **GRANTS** defendants' motion for summary judgment on this front. By like token, National has failed to prove that Hurtado committed at least two acts of racketeering. Indeed, National's claims against Hurtado—whose one-time participation consisted in appearing as claimant—do not pass muster. Because National's § 1962 (c) claims against Hurtado fail as a matter of law, the Court thus **GRANTS** defendants' cross-motion for summary judgment with respect to National's § 1962 (c) claims against Hurtado.

However, Rivera committed four predicate acts in connection with PRAICO and ten predicate acts with respect to Cooperativa. Said differently, Rivera filed four false claims with

**Civil No. 10-1610 (SEC)**                                                                 **23**

PRAICO, committing four mail frauds and ten false claims against Cooperativa, constituting

ten mail frauds. Indeed, the undisputed facts demonstrate that Rivera sent and signed various

letters concerning fabricated reclamations to PRAICO and Cooperativa. Undeniably, Rivera—as

well as these insurance companies—employed the U.S. Postal Service to send and receive

relevant documents during the adjusting and processing of the fraudulent claims filed by Rivera.

To further buttress this conclusion, the First Circuit has made clear that a plaintiff need not

prove that the defendant personally used the mail; only that the defendant acted "with

knowledge that the use of the mails will follow in the ordinary course of business, or [acted in

circumstances] where such use can be reasonably foreseen." Aetna, 43 F.3d at 1560 (quoting

United States v. Maze, 414 U.S. 395, 399 (1974)). In the present instance, not only did PRAICO

and Cooperativa present sufficient evidence supporting their contentions that the mail was used

in the processing of the fraudulent claims filed by Rivera, but also that the use of mail by these

plaintiffs could have been reasonably foreseen by Rivera.

Furthermore, in a span of ten years—namely, from 1995 to 2001—Rivera used the mail

as means of effectuating his bogus claims. Pertinently, Rivera used the mail three times in 1997

and once in 2000 with respect to PRAICO; ten times from 1997 to 2000 in connection with

Cooperativa; and, per his guilty plea, once in 2001 in prejudice of Integrand. Considering these

undisputed facts, this Court finds that PRAICO and Cooperativa have succeeded in establishing

the element of racketeering activity by Rivera.

Finally, Rivera's bogus claims clearly constitute a "pattern of racketeering activity"

because his predicate acts are sufficiently related, and also amount to or pose a threat of

continued criminal activity. The latter's best evidence is the fact that Rivera, *in his guilty plea*,

admitted to participating in a scheme consisting of the obtainment of automobile insurance

policies with various insurance companies in Puerto Rico, as well as recruiting persons with automobile insurance policies. According to the undisputed facts, Rivera orchestrated false accident claims to collect from PRAICO and Cooperativa. Furthermore, as an attorney, he provided legal representation to the alleged victims of these bogus accident claims. Through the use of the mail, he filed at least fourteen false claims, and submitted documents with false information to PRAICO and Cooperativa.

As to the "relatedness" requirement, this Court notes that Rivera's predicate acts share the same purpose (defraud insurance companies), results (cashing of checks as a result of bogus claims), victims (Plaintiffs), and methods of commission (the use of mail, and his influence as an attorney to pressure victims into settling). In essence, Rivera's predicate acts against PRAICO and Cooperativa are interrelated by distinguishing characteristics and are certainly not isolated events.  In light of this robust evidence, PRAICO and Cooperativa satisfy the fourth and final element of a substantive RICO claim.

 For the reasons articulated above, PRAICO and Cooperativa's motion for summary judgment on their § 1962 (c) claims against Rivera is hereby **GRANTED**. In consequence, defendants' motion for summary judgment with respect to these insurance companies is **DENIED**.

### II. Damages under § 1964 (c)

Under RICO's § 1964 (c) , an injured party in his business or property by violation of § 1962 (c) may recover "threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964 (c); see also Bridge, 553 U.S. at 641, 128 S.Ct. 2131, 2141 (noting that § 1964 (c) "[p]rovides a private right of action for treble damages to

**Civil No. 10-1610 (SEC)**                                                              **25**

[a]ny person injured in his business or property by reason of a violation of the Act[] . . . .")
(some alterations in original).

Last year, in <u>Hemi Group, LLC v. City of New York</u>, —— U.S. ——, 130 S.Ct. 983, 989,
175 L.Ed.2d 943 (2010), the U.S. Supreme Court had the opportunity to reiterate the standard
of causation under § 1964 (c); the same standard is applicable here. There, the Court explained
that a plaintiff must show "[t]hat a RICO predicate offense not only was a 'but for' cause of his
injury, but was the proximate cause as well." <u>Id.</u> (quoting <u>Holmes v. Securities Investor
Protection Corporation</u>, 503 U.S. 258, 268, 112 S.Ct. 1311, L.Ed.2d 532 (1992) (some internal
quotation marks omitted)). The Court added that "[p]roximate cause for RICO purposes . . .
should be evaluated in light of its common-law foundations; proximate cause thus requires
'some direct relation between the injury asserted and the injurious conduct alleged.' A link that
is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." <u>Id.</u> (citations omitted; some
alterations in original).

In the present instance, the undisputed facts show that PRAICO and Cooperativa
sustained a loss of $112,500.00 and $206,067.62 respectively, as a direct consequence of
Rivera's fourteen predicate offenses or fraudulent claims against them. Common sense,
moreover, dictates that had Rivera not filed these fraudulent claims, PRAICO and Cooperativa
would not have disbursed thousands of dollars to cover for these bogus claims. Having found
Rivera liable under § 1962 (c), PRAICO and Cooperativa are entitled to recover treble damages
under the statute. Accordingly, partial Judgment will be entered against Rivera as follows: in
the amount of $337,500 in PRAICO's favor; and in favor of Cooperativa for $618,202.86, for
a total of $955,702.86.

**Civil No. 10-1610 (SEC)**                                                    **26**

There is one loose end: whether the Rivera-Hurtado conjugal partnership is jointly liable for the damages Rivera caused to PRAICO and Cooperativa. Plaintiffs, once again, advance an isolated mention with respect to the conjugal partnership's liability.[14] Unfortunately, the defendants also neglected the topic. This Court, however, ferreted out the issue and found that the answer is clear-cut. The Rivera-Hurtado conjugal partnership's joint liability for Rivera's RICO violation depends on whether his actions benefitted financially their conjugal partnership. "If the husband's action or enterprise produces financial benefits to the bulk of the community property, the liability shall also fall upon said property." Lugo Montalvo v. Gonzalez Manon,104 P.R. Dec. 372, 378,4 P.R. Offic. Trans. 517 (1975).

In the case at hand, the facts established by the preponderance of the evidence demonstrate that Rivera's RICO violations and actions benefitted economically the Rivera-Hurtado conjugal partnership. Indeed, the RICO violations perpetrated by Rivera—along with Hurtado's false claim—translated into thousands of dollars that enriched both of them, ultimately benefitting  their conjugal partnership. Because Rivera's RICO violations "[w]ere aimed towards the economic advancement and the furtherance of common interests of the conjugal partnership of which he is a part[,]" the Rivera-Hurtado conjugal partnership is jointly liable for the harm that Rivera caused to PRAICO and Cooperativa. Rivera-Davila v. Asset Conservation, Inc., 44 U.S.P.Q.2d (BNA) 1862, 1864 1997 WL 665540 (D.P.R. 1997).

---

[14] This is at least the third instance where Plaintiffs cite neither legal authorities nor facts in support of a claim or argument, see supra n. 3 & Part I.

**Civil No. 10-1610 (SEC)**                                                                                    **27**

**Conclusion**

For the reasons articulated above, summary judgment on PRAICO and Cooperativa's § 1962 (c) claims against Rivera and the Rivera-Hurtado conjugal partnership is **GRANTED**; defendants' cross-motion for summary judgment is **DENIED** on this front.  But because National, Universal, and CAICO's § 1962 (c) claims against Rivera fail as a matter of law, these are **dismissed with prejudice**.  Further, defendants' motion for summary judgment with respect to all of Plaintiffs' claims against Hurtado is **GRANTED**; such claims are **dismissed with prejudice**. Lastly, Plaintiffs' 1962 (d) claims against Rivera and their conjugal partnership are **dismissed with prejudice**; defendants' motion is thus **GRANTED** on this front.[15] In sum, the parties' cross-motions for summary judgments are **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2011.

*s/Salvador E. Casellas*
Salvador E. Casellas
U.S. Senior District Judge

---

[15] The Insurance Companies admit that they have no evidence of defendants' participation in the conspiracy alleged in the Complaint. See Docket # 1266, p. 4-5; Docket # 1246, ¶¶ 19-21. Plaintiffs, moreover, fail to offer evidence that Rivera participated in a conspiracy, other than the one alleged in the Complaint. Considering the Insurance Companies' perfunctory argument, and because defendants have provided this Court with solid evidence contradicting such claims, Plaintiffs' § 1962(d) argument fails as a matter of law. **GRANTING** Rivera and Hurtado's motion for summary judgment, the Court **dismisses with prejudice** Plaintiffs' § 1962 (c) claims.